Chris Holland (SBN 164053)
cholland@hollandlawllp.com
Pei Hsien Ren (SBN 294252)
pren@hollandlawllp.com
**HOLLAND LAW LLP**
220 Montgomery Street, Suite 800
San Francisco, CA  94104
Tel: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Defendant*
*Jon Byron Davis*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VACC, INC., | Case No.: 3:18-cv-03454-JCS |
| Plaintiff, | **NOTICE OF MOTION AND MOTION OF DEFENDANT JON BYRON DAVIS (A) TO DISMISS AND (B) TO REQUEST REASONABLE ATTORNEYS' FEES** *(CORRECTED)* |
| v. | |
| JON BYRON DAVIS (A.K.A. J. BYRON DAVIS), | **Redacted Version** |
| Defendant. | Date:  March 22, 2019
Time:  2:00 P.M.
Judge:  Hon. Joseph C. Spero
Dept:  Courtroom G – 15th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTIONS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 1, 2019, at 9:30 a.m., or as soon as counsel may be heard by the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, California, in Courtroom G, before the Honorable Joseph C. Spero, Defendant Jon Byron Davis ("Davis") will and hereby does move the Court for an Order dismissing the case and awarding reasonable attorneys' fees pursuant to California Code of Civil Procedure section 425.15 *et seq.* The motion is based on this Notice of Motion, the following argument and cited authorities, the pleadings and papers on filed herein, and any evidence or argument presented to the Court at the hearing.

## STATEMENT OF RELIEF SOUGHT

- Davis seeks an Order from the Court denying VACC's Fed. R. Civ. Proc. 60 request.
- Davis seeks an Order from the Court dismissing with prejudice all claims in this case.
- Davis seeks an Order from the Court awarding reasonable attorneys' fees pursuant to California Code of Civil Procedure Section 425.16.

## STATEMENT OF THE ISSUES

1. Whether the First Amended Complaint ("FAC") should be dismissed pursuant to Fed. R. Civ. P. 60(b)(1), 60(b)(6), and/or 60(d)(1) based on a mutually agreed-upon and judicially-approved settlement and stipulated dismissal with prejudice.

2. Whether the FAC should be dismissed under Federal Rule of Civil Procedure 12(b)(5) and 12(b)(6) given the untimely service of a Complaint which contains both legally and factually deficient allegations.

3. Whether the reasonable fees should be awarded for Davis's litigation costs in moving to strike the claims attacking Davis's rights of petition, including specifically his right to negotiate and enter into a settlement and stipulated dismissal with prejudice, now that those claims were voluntarily dismissed by VACC.

# **TABLE OF CONTENTS**

NOTICE OF MOTIONS ....................................................................................................... i

STATEMENT OF RELIEF SOUGHT ................................................................................. i

STATEMENT OF THE ISSUES ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

I.      The Parties ................................................................................................................. 2

II.     The Settled Prior Lawsuit (VACC v. Davis, 3:16-cv-01350-JCS (N.D. Cal.)) ..................... 3

III.    The In-Court, Stipulated Judgment of Dismissal ................................................... 4

IV.     VACC's Attempt to Resurrect the Settled Prior Litigation ................................... 5

ARGUMENT .......................................................................................................................... 5

I.      VACC's Belated Dislike of the Agreed-Upon Terms Does Not Warrant
        Rescinding Judgment under Rule 60(b) (1), (6) or 60(d) ....................................... 5

        A.      VACC's Conclusory Statements Do Not Demonstrate Any Mistake,
                Inadvertence, Surprise, or Excusable Neglect Pursuant to Rule 60(b)(1). ............. 6

        B.      VACC's Allegations of "Ordinary Circumstances" Cannot Qualify for
                Relief Under Rule 60(b)(6). ...................................................................... 10

        C.      The Boilerplate Allegations Do Not Constitute "Grave Miscarriage of
                Justice" Pursuant to Rule 60(d)(1). ........................................................... 12

        D.      By Contrast, Undoing the Settlement and Dismissal Would Be Unjust to
                Davis and the Judicial System in General ................................................. 14

II.     The Court Should Dismiss All Remaining Claims Pursuant to Rule 12(b)(6). ................. 14

        A.      The Second Cause of Action Fails Because VACC Had Settlement
                Authority and Entered into the Settlement. ............................................... 14

        B.      The Third Cause of Action Fails Because There Was Mutual Assent. ................. 16

                1.      Recession is Not Available Under the Facts As Pled. .................. 16

                2.      Contrary to VACC's Conclusory Assertions, the Settlement
                        Agreement is Enforceable Because There Was Mutual Assent ................ 16

C.      The Fourth Cause of Action Fails Because the Settlement Agreement
        Contains All Material Terms. ................................................................... 18

D.      The Fifth Cause of Action Fails Because the Settlement Agreement is
        Enforceable Without a Written Agreement............................................... 20

E.      The Sixth Cause of Action Fails Because There is No Support for the
        Rescission of the Settlement Agreement under California Civil Code
        Section 1689. ........................................................................................... 21

        1.      The FAC Does Not Properly Allege Mistake of Fact. ................... 21

F.      The Seventh and Eighth Causes of Action Both Fail Because Reformation
        of the Settlement Agreement and Declaratory Judgment Are Without Legal
        or Factual Basis. ...................................................................................... 22

III.    Bad Faith, Undue Delay, and Futility Counsel Against Leave to Amend............................ 22

IV.     The Court Should Dismiss this Suit for Untimely Service Pursuant to Rule
        12(b)(5). ......................................................................................................... 23

V.      The Court Should Award Davis His Reasonable Attorneys' Fees In Its Sound
        Discretion, Including Pursuant to California Anti-SLAPP. ................................... 24

CONCLUSION ............................................................................................................ 25

Defendant's Motion to Dismiss and Request for Attorneys' Fees
CASE NO.: 3:18-cv-03454-JCS

# TABLE OF AUTHORITIES

## Cases

*Art of Living Found. v. Does 1-10,*
    No. 10-05022-LHK, 2012 WL 1565281 (N.D. Cal. May 1, 2012)...................................... 25

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................... 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................................... 14

*Blanton v. Womancare, Inc.,*
    38 Cal. 3d 396, 399 (1985) ............................................................................................... 9

*Branch Banking & Tr. Co. v. D.M.S.I., LLC,*
    871 F.3d 751 (9th Cir. 2017)........................................................................................... 10

*Burns v. McCain,*
    107 Cal. App. 291 (1930)................................................................................................... 9

*Casey v. Albertson's Inc.,*
    362 F.3d 1254, 1260 (9th Cir. 2004).................................................................................. 9

*Citizens Utilities Co. v. Wheeler,*
    156 Cal. App. 2d 423 (1957) ........................................................................................... 18

*Cmty. Dental Servs. v. Tani,*
    282 F.3d 1164, 1170 (9th Cir. 2002)................................................................................ 11

*Cty. of Marin v. Martha Co.,*
    No. 06-0200-SBA, 2006 WL 2586967 (N.D. Cal. Sept. 8, 2006) ................................ 6, 13

*Dillon v. W. Pub. Corp.,*
    553 F. App'x 669 (9th Cir. 2014)..................................................................................... 24

*Doi v. Halekulani Corp.,*
    276 F.3d 1131 (9th Cir. 2002).......................................................................................... 15

*Efaw v. Williams,*
    473 F.3d 1038 (9th Cir. 2007).......................................................................................... 23

*Eminence Capital, LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003).......................................................................................... 23

*Facebook, Inc. v. Pac. Nw. Software, Inc.,*
    640 F.3d 1034 (9th Cir. 2011).......................................................................................... 18

*Ford v. Shearson Lehman Am. Express, Inc.,*
    180 Cal. App. 3d 1011, (1986).......................................................................................... 16

*Garcia v. Allstate Ins.,*
    No. 12-00609, 2012 WL 4210113, at *13 (E.D. Cal. Sept. 18, 2012)............................... 25

*Golden v. Cal. Emergency Physicians Med. Grp.,*

No. 10-00437-JSW-DMR, 2011 WL 13100466 (N.D. Cal. June 23, 2011) .................... 20

*Guzik Tech. Enter., Inc. v. W. Digital Corp.*,
    No. 11-03786-PSG, 2014 WL 12465441, (N.D. Cal. Mar. 21, 2014) .............................. 20

*Hall v. Haws*,
    861 F.3d 977 (9th Cir. 2017)........................................................................................ 12

*Harrop v. W. Airlines, Inc.*,
    550 F.2d 1143 (9th Cir. 1977).......................................................................................9

*Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.*,
    No. 15-02592-SI, 2016 WL 4426901 (N.D. Cal. Aug. 22, 2016) .................................. 22

*Hedging Concepts, Inc. v. First All. Mortg. Co.*,
    41 Cal. App. 4th 1410 (1996)......................................................................................21

*Hopkins & Carley, ALC v. Thomson Elite*,
    No. 10-05806-LHK, 2011 WL 1327359 (N.D. Cal. Apr. 6, 2011).................................. 16

*HPS Mech., Inc. v. JMR Constr. Corp.*,
    No. 11-02600-JCS, 2014 WL 5451987 (N.D. Cal. Oct. 17, 2014).................................. 12

*In re Native Energy Farms, LLC*,
    745 F. App'x 272 (9th Cir. 2018)................................................................................ 12

*Int'l Allied Printing Trades Ass'n. v. Am. Lithographers, Inc.*,
    233 F.R.D. 554 (N.D. Cal. 2006) ...................................................................................9

*Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*,
    791 F.2d 1334 (9th Cir. 1986) ..................................................................................... 11

*Lal v. California*,
    610 F.3d 518 (9th Cir. 2010)....................................................................................... 11

*Latshaw v. Trainer Wortham & Co.*,
    452 F.3d 1097 (9th Cir. 2006) .................................................................. 7, 9, 10, 11

*Law Offices of Bruce Altschuld v. Wilson*,
    632 F. App'x 321 (9th Cir. 2015)................................................................................ 25

*Lehman v. United States*,
    154 F.3d 1010 (9th Cir. 1998) ............................................................................. 10, 12

*Link v. Wabash R. Co.*,
    370 U.S. 626 (1962) .................................................................................................... 14

*Lorenz v. Bd. of Trustees Carpenters Health & Welfare Tr. Fund for Cal.*,
    No. 15-01430-WHO, 2016 WL 1365941 (N.D. Cal. Apr. 6, 2016) ............................... 17

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
    89 Cal. App. 4th 1042 (2001)...................................................................................... 17

*Marshall v. Holmes*,
    141 U.S. 589 (1891) .................................................................................................... 13

*Mason v. MediFit Corp. Servs., Inc.*,
  No. 17-02542-JST, 2018 WL 1609374 (N.D. Cal. Apr. 3, 2018) ....................... 19

*Mayer Hoffman McCann, P.C. v. Camico Mut. Ins. Co.*,
  161 F. Supp. 3d 858 (N.D. Cal. 2016) ................................................................ 22

*Mireskandari v. Associated Newspapers, Ltd.*,
  665 F. App'x 570 (9th Cir. 2016) ......................................................................... 25

*Navajo Nation v. Dep't of the Interior*,
  876 F.3d 1144 (9th Cir. 2017) ....................................................................... 11, 12

*Operating Engineers Pension Tr. v. Gilliam*,
  737 F.2d 1501 (9th Cir. 1984) .............................................................................. 16

*Pfeiffer Venice Properties v. Bernard*,
  101 Cal. App. 4th 211 (2002) ............................................................................... 25

*Plevin v. City & Cty. of San Francisco*,
  No. 11-02359-CW, 2011 WL 3240536 (N.D. Cal. July 29, 2011) ....................... 25

*Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*,
  No. 16-00669-YGR, 2018 WL 3570664 (N.D. Cal. July 25, 2018) ................ 19, 20

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990) ................................................................................ 22

*Rios v. Paramo*,
  No. 13-2455, 2015 WL 8492500 (S.D. Cal. Dec. 10, 2015) ................................. 17

*Robinson v. Alameda Cty.*,
  875 F. Supp. 2d 1029 (N.D. Cal. 2012) ............................................................... 24

*Rosenthal v. Great W. Fin. Sec. Corp.*,
  14 Cal. 4th 394 (1996) .......................................................................................... 16

*Rutherford v. Palo Verde Health Care Dist.*,
  No. 13-01247, 2014 WL 12634510 (C.D. Cal. May 13, 2014) ............................. 25

*Sales v. City of Tustin*,
  739 F. App'x 462 (9th Cir. 2018) ........................................................................... 6

*Salimi v. BMW Fin. Servs. NA, LLC*,
  No. 12-01754-JSW, 2017 WL 4570367(N.D. Cal. Sept. 29, 2017) ..................... 21

*Semiconductor Equip. & Materials Int'l, Inc. v. The Peer Grp., Inc.*,
  No. 15-00866-YGR, 2015 WL 5535806 (N.D. Cal. Sept. 18, 2015) .................... 25

*Sheehan v. City & Cty. of San Francisco*,
  No. 96-3931-JCS, 1999 WL 33292942 (N.D. Cal. June 15, 1999) ................. 10, 12

*Shirley v. Univ. of Idaho, Coll. of Law*,
  800 F.3d 1193 (9th Cir. 2015) .............................................................................. 23

*Signature Fin., LLC v. McClung*,
  No. 16-3621, 2017 WL 6940652 (C.D. Cal. Oct. 6, 2017) ................................... 18

*Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*,
   708 F.3d 1109 (9th Cir. 2013) ................................................................. 22

*Spitzer v. Aljoe*,
   No. 13-05442-MEJ, 2016 WL 7188007 (N.D. Cal. Dec. 12, 2016) ................... 9

*Spitzer v. Aljoe*,
   No. 13-05442-MEJ, 2016 WL 3279167 (N.D. Cal. June 15, 2016) ............ 19, 22

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................. 14

*Stavrinides v. Vin Di Bona*,
   No. 17-05742-WHO, 2018 WL 317821 (N.D. Cal. Jan. 8, 2018) ................... 21

*Sylmar Air Conditioning v. Pueblo Contracting Servs., Inc.*,
   122 Cal. App. 4th 1049 (2004) ................................................................. 24

*United States v. Beggerly*,
   524 U.S. 38 (1998) ........................................................................... 12, 13

*Zone Sports Ctr. Inc. LLC v. Red Head, Inc.*,
   No. 11-00634-JST, 2013 WL 2252016 (N.D. Cal. May 22, 2013) ................... 13

**<u>Statutes</u>**

Cal. Civ. Code § 1542 ........................................................................... passim

Cal. Civ. Code § 1689 ................................................................................ 24

Cal. Civ. Code § 1689 (b)(1) ...................................................................... 25

Cal. Civ. Code § 3399 ................................................................................ 26

Cal. Civ. Code § 426.16(c)(1) ..................................................................... 29

**<u>Rules</u>**

Fed. R. Civ. Proc. 12(b)(5) ........................................................................ 24

Fed. R. Civ. Proc. 12(b)(6) .................................................................. 14, 25

Fed. R. Civ. Proc. 4(m) ............................................................................ 24

Fed. R. Civ. Proc. 60 ........................................................................... passim

Fed. R. Civ. Proc. 60(b) ................................................................... 6, 13, 24

Fed. R. Civ. Proc. 60(b)(1) .................................................................. passim

Fed. R. Civ. Proc. 60(b)(6) ............................................................. 10, 11, 12

Fed. R. Civ. Proc. 60(d) ..................................................................... 6, 13

Fed. R. Civ. Proc. 60(d)(1) ............................................................... 12, 13

Defendant's Motion to Dismiss and Request for Attorneys' Fees
CASE NO.: 3:18-cv-03454-JCS

Fed. R. Civ. Proc. 8(a)...........................................................................................14

**<u>Treatises</u>**

11 C. Wright & A. Miller, Federal Practice & Procedure § 2868 (1973).........................13

Defendant's Motion to Dismiss and Request for Attorneys' Fees
CASE NO.: 3:18-cv-03454-JCS

**INTRODUCTION**

Nothing in the First Amended Complaint ("FAC") could and does remedy the deficiencies of the initial Complaint, because irrespective of how VACC attempts to wordsmith the allegations, the irrefutable fact remains that this case should never have been filed because the purported "dispute" underlying it was fully and finally resolved after multiple Settlement Conferences before Judge Kim. Indeed, Plaintiff VACC, Inc. ("VACC") and Defendant J. Byron Davis ("Davis") – each represented by competent counsel and with several clear opportunities to object and be heard – stipulated to a dismissal with prejudice, which this Court approved and entered on July 10, 2017.  Consequently, the FAC is untenable both substantively and procedurally, and must be dismissed.

By VACC's own admission in the Complaint and in the FAC, that full and final resolution came not only after more than a year of active litigation, but after: (a) the parties exchanged emails confirming all settlement terms; (b) those terms were read into the record by Judge Kim, at which time the terms were expressly confirmed again and agreed to by the parties; and (c) the parties thereafter jointly reviewed and submitted the aforementioned dismissal with prejudice – yet again affirming that their settlement terms were complete and accurate, and that the underlying dispute should be ended for all time.

The case law is abundantly clear in these circumstances: settlements are sacrosanct, particularly when they are judicially approved, as is the case here.  None of the extremely limited exceptions apply, notwithstanding the strained efforts by VACC's new counsel to plead around the repeated, express approvals of the settlement by VACC, its founder and owner, and its counsel-of-record during the entire pendency of the prior case.  On the contrary, as set forth in more detail below, there are abundant grounds – based on the Federal Rules, the applicable statutes, and case law – any one of which would mandate the FAC's dismissal, and all of which collectively compel it.

Moreover, the parties managed to move on with their lives under the settlement for more than a year – up to and including the 129-day period when VACC improperly (and in the face of this Court's denial of an extension) exceeded the Federal Rules before serving this Complaint.  The purported "harm" that VACC now so adamantly contends it will suffer was clearly not important enough to prevent it from delaying even raising the supposed issue via its new Complaint for that

1

1    entire period – and then delayed more than four months' longer before serving Defendant.

2        The reason for those extensive delays – and the practical reason that this case is utter

3    nonsense – is that there really is no "there there" with respect to the relief sought by VACC.  Very

4    simply, the "Representation Clause" allegedly "left out" of the judicially-sanctioned settlement, is

5    nothing more than an attempted restatement of the entirety of the underlying claims in the prior

6    action.

7        Put simply, the prior case centered around Davis supposedly taking VACC's proprietary

8    information.  After more than a year of trying (including multiple depositions), VACC had no

9    evidence whatsoever that there was any basis for its claims.  The parties then decided to resolve those

10   unfounded claims and dismiss them with prejudice via essentially a basic "walkaway" agreement.  The

11   supposed need to belatedly include a "Representation Clause" in that settlement is based on circular

12   logic: when you are resolving claims that property was taken, no "warranty and representation" that

13   no property was taken is required, because *the claim itself is going away pursuant to the parties'*

14   *stipulation*.  Moreover, if that "clause" were included, the same case – alleged taking of property –

15   could be endlessly litigated into perpetuity, every time VACC wanted to once again trot out the

16   supposedly-settled matter.

17       In reality, the fact that such a clause is even being requested – and more generally, the attempt

18   to resurrect the prior case on such a frivolous basis – is very telling with regard to VACC's motives.

19   Since the settlement, Davis has moved on and flourished.  VACC, by contrast, has been unable to

20   fairly compete in the marketplace, so it has now resorted to this procedurally late and substantively

21   barred attempt at exactly what the "Representation Clause" would have provided it: an opportunity to

22   tie up its competitor with litigation that was already resolved.

23       VACC's actions should not be countenanced.  This case should be dismissed immediately, and

24   Davis awarded his attorneys' fees, as set forth below.

25                                   **FACTUAL BACKGROUND**

26   **I.    The Parties**

27       Defendant Davis has worked as a vibration and noise consultant for more than twenty years,

28   servicing government entities, research institutions, technology companies, and other clients.  Davis

1    has established a solid reputation with the clientele based on his experience, along with the many

2    papers and publications he has authored in the field.

3          Davis first met Mr. Ahmad Bayat ("Bayat"), the sole owner and principal of VACC when they

4    were both employees at Colin Gordon Associates.  Bayat later wanted to start his own firm and

5    recruited Davis to join him.  At the time, Davis instead opted to leave Colin Gordon Associates to

6    work for another company, but kept in touch with Bayat.  When Bayat started VACC, he again

7    sought out Davis, and among other things, promised profit sharing as part of the compensation.

8    Davis agreed to join VACC in 2000 and remained as an employee before leaving in August 2015.

9    **II.**      **The Settled Prior Lawsuit (VACC v. Davis, 3:16-cv-01350-JCS (N.D. Cal.))**

10        Toward the end of Davis's employment with VACC, the work environment was deteriorating.

11   Over time, Bayat became an absentee principal, leaving Davis and other employees to shoulder much

12   of the work and day-to-day operations.  At the same time, Bayat continued to ignore Davis's

13   repeated requests for his share of the profits.  Bayat also failed to honor his agreement with Davis

14   regarding co-development of an instrument for monitoring noise and vibration.

15        The instrument in question was the result of Davis's personal effort and time in seeking better

16   and cost-efficient solutions to monitor noise and vibration, an idea Davis started working on since the

17   late 1990's.  This was despite the fact that those in his profession, including those at VACC,

18   traditionally resort to third-party tools for their work.  When Davis was ready to implement his idea,

19   he invited VACC to be a co-partner to develop the instrument.  Bayat offered to split the instrument

20   profits 50-50.  Believing that he was entitled to a larger share, Davis prepared a counteroffer.  Bayat

21   rejected that counteroffer and reiterated his original position, to which Davis subsequently agreed.

22   When profit from the instrument later became a reality, Bayat instead sought to cut Davis out of the

23   instrument business, ironically reneging on the agreement he offered in the first place.  At this point,

24   Davis realized that staying with VACC and Bayat would only stifle his career and earnings.  Seeing

25   no hope that VACC and Bayat would ever make good on their agreements, Davis left VACC and

26   started his own company, Vibrasure.

27        VACC thereafter filed suit against Davis in March 2016 ("Prior Suit") based on Bayat's

28   speculation that Davis stole VACC's business information.  Davis asserted counterclaims, many

3

stemming from VACC's failure to pay Davis his share of the profit, his 50-50 profit split as an instrument co-developer, and VACC's persistent use of Davis's name on its website and client-facing materials after Davis's departure and without his consent. The parties attempted mediation and participated in two settlement conferences oversaw by Judge Sallie Kim without success.

However, Davis thereafter realized that he needed to put the suit behind him, for the sake of his business and personal life, even if that means that his counterclaims would not be heard. The parties agreed to settle and each exchanged redlines to a mediator's proposal provided by Judge Kim. VACC insisted on its version of the terms and rejected all of Davis's redlines. On or about June 19, 2017, Davis reluctantly accepted VACC's version, which reflected the terms of the oral settlement Judge Kim read into the record on June 30, 2017. The settlement states that it was a "binding oral settlement agreement," and that "[t]he parties may, but are not required, to have a written settlement agreement." It also states that the parties "will each explicitly waive [California] Civil Code Section 1542." [1]  Among other terms, the settlement further required ███████████████████████ █████████████████████████████████.

The parties then filed a stipulated judgment of dismissal, which was entered by this Court on July 10, 2017. The transcript of the oral settlement was available to the parties on August 19, 2017.

## III.    The In-Court, Stipulated Judgment of Dismissal

Although a more detailed, long form settlement agreement was not necessary, Davis's prior counsel sent VACC a draft written settlement mirroring what Judge Kim read into the record. Around the same time, Davis had also repeatedly requested VACC to remove references to him from its website ███████████████████████████████, but to no avail.

Belatedly in November 2017, VACC's current counsel, who is now a different counsel from Prior Suit, reached out, but not to address VACC's failure to remove Davis's names from its website. Rather, VACC insisted on, among other revisions in the draft written agreement, inserting a "Representation Clause," in which Davis would represent that he did not take any of VACC's

---

[1] Cal. Civ. Code § 1542 ("A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.")

materials that were the subject of the Prior Suit.  In response, Davis made clear that this term was never part of the agreement.  FAC, Ex. 6, at 2, 4.  Davis also brought to VACC's attention that references to him remained on its website, which was a ███████████████████████ ███████.  VACC responded on November 17, 2017 that there would be no settlement without the "Representation Clause."  It also represented that the references to Davis would be removed within a day or so.  The parties never finalized a written agreement.  As to VACC's website, it has now been more than a year since that November 2017 correspondence and despite the multiple requests made by Davis, many references to Davis have not been removed as of the filing of this motion.

## IV.   VACC's Attempt to Resurrect the Settled Prior Litigation

Bayat contacted Judge Kim on September 13, 2017 and VACC's counsel also wrote to Judge Kim on March 14, 2018, asking that the settlement be rescinded and attaching a declaration by Bayat, identical to Exhibit 7 to the FAC.  Neither prompted Judge Kim to take any action.  About three months later on June 11, 2018, VACC filed the current suit against Davis, seeking rescission of judgement and the settlement agreement.  The Complaint relies on (1) Bayat's emails with VACC's prior counsel to allege that Bayat understood "Representation Clause" to be part of the agreement; and (2) unspecified misrepresentation that Davis had committed to obtain the settlement.  After Davis moved to dismiss and strike the Complaint, VACC responded by filing the FAC, which attempts to circumvent an order striking the complaint by omitting claims directed to Davis's petitioning rights.

Although VACC has belatedly dismissed these claims that violated Davis's right to petition, the remaining claims in the FAC are the same as the initial Complaint – in that not only they are without merit, but they also run contrary to known facts.

VACC also failed to timely serve Davis by the 90-day deadline.  Four months later after filing of the complaint, VACC applied for an extension to serve Davis, which this Court denied.  Davis did not receive the Complaint and Summons from a process server until October 17, 2018.

## <u>ARGUMENT</u>

## I.   VACC's Belated Dislike of the Agreed-Upon Terms Does Not Warrant Rescinding Judgment under Rule 60(b) (1), (6) or 60(d).

The Court should deny VACC's Rule 60 request because buyer's remorse does not warrant

rescinding judgment.  As a preliminary matter, the instant suit is an improper vehicle under Rule 60(b).  First, Rules of Civil Procedure on their own provide no cause of action.  Second, as explained in more detail below, Rule 60(d) permits a court to "entertain an independent action to relieve a party from a judgment" only in circumstances of grave injustice not present here.  Lastly, an independent action under Rule 60(d) is not permitted when same request is made under Rule 60(b).  *See Cty. of Marin v. Martha Co.*, No. 06-0200-SBA, 2006 WL 2586967, at *5 (N.D. Cal. Sept. 8, 2006) ("If the right to make a motion is lost by the expiration of the time limits fixed in these rules, the only other procedural remedy is by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action.")(citing Fed. R. Civ. P. 60, Advisory Committee Notes).  As such, VACC's request to rescind judgment can at best be construed as a Rule 60(b) motion where VACC bears the burden to demonstrate its entitlement to relief.  *See Sales v. City of Tustin*, 739 F. App'x 462, 463 (9th Cir. 2018).

Nonetheless, VACC's Rule 60(b) request is frivolous whether it is evaluated under the Rule 60 or the pleading standard.  The FAC claims that VACC understood that the settlement agreement included a "Representation Clause," and attributes this understanding to emails between Bayat and VACC's prior counsel.  FAC ¶¶ 33, 45.  These assertions fall far short of the high bar required by Rule 60 to disturb a judgment.  And in any event, the curiously belated "understanding," the exhibits to the FAC, and all the judicially-noticeable facts actually contradict VACC's claims.

### A. VACC's Conclusory Statements Do Not Demonstrate Any Mistake, Inadvertence, Surprise, or Excusable Neglect Pursuant to Rule 60(b)(1).

Regrets constitute the actual real driving force behind this suit.  While the prior Complaint relied on "mistake" and "fraud," VACC is now grasping at straws by reciting all the grounds of Rule 60(b)(1) verbatim – "mistake, inadvertence, surprise or excusable neglect."  Regardless, the absence of a "Representation Clause" in the settlement agreement was intentional.  *See* FAC ¶ 60.  Fed. R. Civ. Proc. 60(b)(1) is below:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect. . . .

Fed. R. Civ. Proc. 60(b)(1).

As the Ninth Circuit held, "Rule 60(b)(1) is not intended to remedy the effects of a litigation decision that a party later comes to regret through subsequently-gained knowledge that corrects the erroneous legal advice of counsel." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir. 2006). In *Latshaw*, the plaintiff moved under Rule 60(b)(1) to rescind her acceptance of a Rule 68 offer of judgment due to her mistaken beliefs caused by her counsel. *Id.* at 1100. According to the plaintiff, she only accepted the offer because her counsel erroneously advised that if the offer was rejected and the offer exceeded her ultimate judgment, she would be liable for costs and attorneys' fees when in fact, she would only be liable for costs. *Id.* at 1099-1100. Affirming the lower court's denial of the motion, the Ninth Circuit held that a party's erroneous belief is not a valid ground to set aside judgment. *Id.* at 1102. Finding this principle to be a consensus in the Ninth Circuit as well as other circuits, the court underscored that "[a]s a general rule, parties are bound by the actions of their lawyers, and alleged attorney malpractice does not usually provide a basis to set aside a judgment pursuant to Rule 60(b) (1)." *Id.* at 1101; *see also id.* ("[A] party who simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot later, once the lesson is learned, turn back the clock to undo those mistakes.") (citation omitted).

Here, VACC's basis to rescind judgment is far more unreasonable than that of the plaintiff in *Latshaw* (or any reasonable person in VACC's position). There was no mistake, inadvertence, or excusable neglect when VACC agreed to the settlement because it controlled the settlement negotiations and the final outcome with an iron fist, dictating the provisions of the settlement and strong-arming Davis into the settlement on its own terms. As seen in the parties' emails, VACC rejected Davis's proposal for settlement on June 15, 2017, and insisted on its terms, which did not have a "Representation Clause." FAC ¶ 19, Ex. 2 to FAC, at 8. On June 19, 2017, Davis through his counsel accepted the terms of the offer as proposed by VACC. *Id.* at 7. VACC's counsel then told Bayat that Davis had accepted the offer. *Id.* at 6.

Although the FAC and Bayat's declaration conclusorily allege that Bayat believed that the "Representation Clause" was part of the settlement agreement, and that the oral settlement was not "a complete recitation of the terms," FAC ¶ 35, Judge Kim's settlement record makes clear that no

reasonable person in VACC's position could have been mistaken or surprised.  An excerpted

transcript is reproduced below.

> THE COURT: . . . This is a binding oral settlement agreement. The parties
> may, but are not required, to have a written settlement agreement . . .
> Both sides will provide each other with a release of all claims, and none of
> them known as of today, and they will each explicitly waive Civil Code
> Section 1542. . . . We'll start with plaintiff's counsel. Is that your
> understanding of the settlement terms?
> MR. KANACH: This is Michael Kanach, and yes, it is.
> THE COURT: Thank you, and plaintiff himself, can you also state that you
> approve of this?
> MR. BAYAT: Yes.

Ex. 1 to FAC, 4:6-8; 5:4-6, 18-24.  As such, VACC unambiguously confirmed to Judge Kim that it

agreed to the terms where a written agreement was not required and that the parties waive California

Civil Code Section 1542.[2]  The FAC's tortured and disingenuous attempt to explain away this

affirmation flies in the face of these facts.  Other parts of the record only further contradict the FAC's

baseless pleadings.  VACC's prior counsel specifically advised Bayat that

> The terms of the settlement to be read on the record are the version that we
> sent to them as a counter proposal to the judge's mediators proposal. I
> believe we sent it to them to [sic] Monday's ago and said the exact same
> offer two Fridays ago. I don't have the dates in front of me right now.
> Davis excepted [sic] VACCs proposal, so we have an agreement.

Ex. 2 to FAC, at 3.  The prior counsel also said that VACC "can sue for anything [Davis] does going

forward from the settlement. The settlement deals with actions *before and up to the time of*

*settlement*." *Id.* at 2 (emphasis added).  Based on this advice, it would have been unreasonable and

entirely illogical for VACC to believe that the parties had agreed to some un-named terms extraneous

to the settlement proposal.  Furhter, no reasonable person would have believed that there would be an

extraneous agreed-upon term, such as a "Representation Clause," that would permit VACC to dredge

up a settled dispute in future based on actions "*before and up to the time of settlement*."

Far from being "mistakes" or any other grounds under Rule 60(b)(1), Bayat's beliefs were in

reality regrets for offering terms of a settlement that Davis accepted, not unlike when Bayat tried to

---

[2] Cal. Civ. Code § 1542 ("A general release does not extend to claims which the creditor does not
know or suspect to exist in his or her favor at the time of executing the release, which if known by
him or her must have materially affected his or her settlement with the debtor.")

Defendant's Motion to Dismiss and Request for Attorneys' Fees
CASE NO.: 3:18-cv-03454-JCS

renege the agreement to split the instrument profit 50-50.  As such, VACC's basis for rescinding

judgment is no basis at all, and certainly much less deserving than that in *Latshaw*.  Even assuming

that VACC had mistaken beliefs, which it did not, *Latshaw* forecloses that as a reason to rescind

judgment.  This is true even assuming that VACC's prior counsel provided erroneous legal advice as

egregious as in *Latshaw*, where the counsel's advice was in direct contradiction to the plain text of

federal rules of civil procedure.  *Latshaw*, 452 F.3d at 1099-1100; *see also id.* at 1100 (declining

similar request for relief under Rule 60(b)(1) put forth as "excusable neglect") (citing *Casey v.

Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004)).  As aptly put by the Ninth Circuit, "parties

should be bound by and accountable for the deliberate actions of themselves and their chosen counsel.

This includes not only an innocent, albeit careless or negligent, attorney mistake, but also intentional

attorney misconduct."  *Latshaw*, 452 F.3d at 1101.[3]

Courts in this District have hewn closely to this Ninth Circuit holding in order to defend the

integrity of settlements against groundless attacks such as what VACC has brought here.  *See, e.g.*,

*Int'l Allied Printing Trades Ass'n. v. Am. Lithographers, Inc.*, 233 F.R.D. 554, 555-556 (N.D. Cal.

2006) (rejecting a plaintiff's Rule 60(b)(1) motion for her mistaken belief or "miscommunication"

about a dismissal "with" prejudice,  and finding that "[t]his is not a case of a 'typo' or even a missed

---

[3] The few cases where courts vacated judgments have little, if any, bearing on our case. For example, the court in *Harrop v. W. Airlines, Inc.* reversed the district court's denial of a Rule 60 motion under a unique set of circumstances that makes this case of limited application to our case.  550 F.2d 1143, 1144 (9th Cir. 1977).  In *Harrop*, the district court entered an order of dismissal *sua sponte* based on attorneys' oral representation that the case was settled but noted that the order could be vacated within sixty days if the terms of the settlement could not be reached.  550 F.2d 1143, 1144 (9th Cir. 1977).  The terms of the settlement were never reached and the record failed to show that the parties ever agreed to settle.  *Id.*  Rule 60 relief was denied by the district court, however, because it was made after the sixty days deadline.  The *Harrop* court thus remanded the case to district court "for further factual inquiry" on whether there was consent to dismiss the action.

Other cases where counsel might have entered into an agreement against their clients' wishes do not have analogous facts to this case and are also not related to the application of Rule 60.  In *Blanton v. Womancare, Inc.*, it was uncontroverted that the attorney conceded that he entered into a stipulation to submit the case to arbitration against his client's wishes and the client did not even know that he agreed to the stipulation. 38 Cal. 3d 396, 399 (1985); *Burns v. McCain*, 107 Cal. App. 291, 293 (1930) (noting that the attorney stipulated to settlement against the wishes of his client and did not inform the client of the stipulation at the time).  In contrast, VACC not only agreed to settle on the record but also jointly filed the stipulated dismissal in this case.  *Latshaw* remains the controlling Ninth Circuit authority on Rule 60 and is most applicable to our case here.

Defendant's Motion to Dismiss and Request for Attorneys' Fees
CASE NO.: 3:18-cv-03454-JCS

filing deadline, which the court might readily categorize as 'mistake' or 'excusable neglect'"); *Spitzer v. Aljoe*, No. 13-05442-MEJ, 2016 WL 7188007, at *5, 11 (N.D. Cal. Dec. 12, 2016) (noting that amending judgment is an "extraordinary remedy" and refusing to reopen a settled case based on a choice of litigation strategy) (citing *Latshaw*, 452 F.3d at 1101); *Sheehan v. City & Cty. of San Francisco*, No. 96-3931-JCS, 1999 WL 33292942, at *6 (N.D. Cal. June 15, 1999) (denying relief under Rule 60(b)(1) and noting that "a number of courts have held that it would be an abuse of discretion to grant a new trial under Rule 60(b)(1) on the basis of a party or her attorney's negligent mistake"). Accordingly, VACC's request to rescind judgment under Rule 60(b)(1) should be denied.

In the context where a moving party seeks to excuse a delay in its filings, the Ninth Circuit has also set forth a four-factor test specific for "excusable neglect": "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 765 (9th Cir. 2017) (citation omitted). Because the FAC does not seek to excuse any untimely filings, this test is not relevant. Even if the test were to be applied, the FAC fails in all respects. VACC does not and cannot provide any reason for the delay in including this "Representation Clause" in the settlement offer it made to Davis. VACC's bad faith is also evidenced by supposedly raising this clause to its prior counsel only after the offer was accepted. Unraveling the judgment and settlement would surely afflict Davis with extraordinary prejudice and a suit that lives on with no end in sight. The Rule 60(b)(1) request must be denied for this additional reason.

### B. VACC's Allegations of "Ordinary Circumstances" Cannot Qualify for Relief Under Rule 60(b)(6).

Compared to the initial Complaint, the FAC adds Rule 60(b)(6) as an additional ground in support of VACC's request for relief, the relevant subparagraph of which is provided below.

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: []
>
> (6) any other reason that justifies relief.

Fed. R. Civ. Proc. 60(b)(6). "Rule 60(b)(6) is a catch-all provision that allows a court to vacate a judgment for 'any other reason justifying relief from the operation of the judgment.'" *Lehman v.*

1   *United States*, 154 F.3d 1010, 1017 (9th Cir. 1998) (citation omitted).  This rule should be used

2   "sparingly" to avoid "manifest injustice" and "*only* where extraordinary circumstances prevented a

3   party from taking timely action to prevent or correct an erroneous judgment."  *Navajo Nation v.*

4   *Dep't of the Interior*, 876 F.3d 1144, 1173 (9th Cir. 2017) (emphasis in original).  To receive Rule

5   60(b)(6) relief, a moving party must also "show both injury and that circumstances beyond its control

6   prevented timely action to protect its interests."  *Id.*  Further, "[a] motion brought under 60(b)(6)

7   must be based on grounds other than those listed in the preceding clauses."  *Lafarge Conseils Et*

8   *Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1338 (9th Cir. 1986).

9          Other than bare-bones legal conclusions, FAC provides no factual allegations going to any

10  manifest injustice or any allegations that are different from those directed to the preceding Rule

11  60(b)(1) clause.  *See* FAC ¶ 62.  Indeed, the allegations are so commonplace that the many Circuit

12  and District Court cases denying Rule 60 Relief cited herein were confronted with similar if not

13  identical facts.  No supporting fact can exist anyway because: 1) VACC drafted the proposed

14  settlement terms accepted by Davis; 2) VACC itself approved the agreement read by Judge Kim into

15  the record; 3) only after VACC learned of Davis's acceptance did it suddenly find the "Representation

16  Clause" important and allegedly communicated this only with its prior counsel; 4) VACC was also

17  repeatedly informed by its prior counsel and Judge Kim that the terms read into the record would

18  reflect the agreement, and that the parties expressly waived Cal. Civil Code § 1542; 5) VACC has

19  made no showing of injury.  Most importantly, at no point were the circumstances beyond VACC's

20  control.  In fact, VACC was in control at all times and deliberately choose to bind itself to the

21  settlement.  As such, no 60(b)(6) relief can be justified.

22         Where courts have vacated judgment under Rule 60(b)(6), the pertinent facts were vastly

23  different from the instant action.  The court in *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1170 (9th

24  Cir. 2002) found that attorney's gross negligence may constitute "extraordinary circumstances"

25  where "the attorney ignored court orders, neglected motions, missed hearings and other court

26  appearances, failed to file pleadings or serve them on opposing counsel, and otherwise 'virtually

27  abandoned his client by failing to proceed with his client's defense despite[repeated] court orders to

28  do so.'"  *See Latshaw*, 452 F.3d at 1103.  Discussing *Tani* in length, the Ninth Circuit emphasized

that *Tani*'s Rule 60(b)(6) relief was specific for default judgments and does not obviate "a client's accountability for his counsel's neglectful or negligent acts." *Latshaw*, 452 F.3d at 1103.  Similarly, *Lal v. California* explicitly limited the grant of 60(b)(6) relief to a default judgment caused by a failure to prosecute, facts of which are not present here.  610 F.3d 518, 522, 525 (9th Cir. 2010). The *Lal* court further discussed *Latshaw* with approval and underscored "default judgment" as the distinguishing point.  *Id.* at 525.  *See also Hall v. Haws*, 861 F.3d 977, 981 (9th Cir. 2017) (granting Rule 60(b)(6) to a pro se prisoner who would have his petition granted absent extraordinary circumstances).  These and other cases where courts have granted 60(b)(6) command circumstances rare and extraordinary in many orders of magnitude beyond those of the instant case.

        In cases more akin to this case, courts have often denied Rule 60(b)(6) request.  *E.g.*, *Navajo Nation*, 876 F.3d at 1173 (in a case concerning a tribe's water rights, affirming the denial of relief under Rule 60(b)(6) and noting that it is "our policy of promoting the finality of judgments"); *In re Native Energy Farms, LLC*, 745 F. App'x 272, 276 (9th Cir. 2018) (affirming denial of Rule 60(b)(6) because there were no extraordinary circumstances and the movant brought the same allegations of fraud and service under Rule 60(b)(6) that it did under the other Rule 60(b) clauses); *Lehman v. United States*, 154 F.3d 1010, 1017 (9th Cir. 1998) (affirming denial of Rule 60(b)(6), reasoning that "[n]eglect or lack of diligence is not to be remedied through Rule 60(b)(6)"); *HPS Mech., Inc. v. JMR Constr. Corp.*, No. 11-02600-JCS, 2014 WL 5451987, at *9 (N.D. Cal. Oct. 17, 2014) (denying relief under all subparts of Rule 60 and noting that the rule does not "grant a party dissatisfied with a judgment a second chance at its own missed opportunities or unsuccessful arguments"); *Sheehan*, 1999 WL 33292942, at *7 (holding that "attorney error is insufficient grounds for relief under both Rule 60(b)(1) and 60(b)(6)") (citation omitted).

### C.      The Boilerplate Allegations Do Not Constitute "Grave Miscarriage of Justice" Pursuant to Rule 60(d)(1).

        The FAC further cites to Rule 60(d)(1) for relief without the slightest explanation how that applies.  The relevant subparagraph is below:

(d) Other Powers to Grant Relief. This rule does not limit a court's power to:
        (1) entertain an independent action to relieve a party from a judgment, order, or proceeding . . . .

1   Fed. R. Civ. Proc. 60(d)(1).  At the outset, VACC cannot avail itself to a Rule 60(d)(1) independent

2   action if the same allegations form the basis for its Rule 60(b) request.  This is because the proper

3   grounds for Rule 60(d)(1) cannot be the same as those for 60(b).  *See United States v. Beggerly*, 524

4   U.S. 38, 46 (1998) ("[T]he strict 1-year time limit on [Rule 60(b)] motions would be set at naught," if

5   the same relief can "be obtained through an independent action" under Rule 60(d)(1)); *see also Cty.*

6   *of Marin*, 2006 WL 2586967, at *5; 11 C. Wright & A. Miller, Federal Practice & Procedure § 2868,

7   at 237-38 (1973) ("The reference to 'independent action' in the saving clause is to what had been

8   historically known simply as an independent action in equity to obtain relief from a judgment").

9          Even if VACC is not barred from getting two bites at the apple with the same allegations, it

10  cannot meet the demanding standard required by Rule 60(d)(1).  Independent actions are available

11  only "to prevent a grave miscarriage of justice." *Beggerly*, 524 U.S. at 47.  VACC thus must make

12  "a strong showing to overcome the policy favoring finality of judgments" before this independent

13  action under Rule 60(d)(1) can proceed.  *Zone Sports Ctr. Inc. LLC v. Red Head, Inc.*, No. 11-

14  00634-JST, 2013 WL 2252016, at *7 (N.D. Cal. May 22, 2013) (citation omitted).  In a dispute over

15  land ownership, the Government led the plaintiffs in *Beggerly* to believe just prior to settlement that

16  there was no document evidencing private land ownership. *Beggerly*, 524 U.S. at 40.  The plaintiffs

17  later discovered that the Government failed to produce certain documents that were so important that

18  the Fifth Circuit found the plaintiffs' entitlement to the land "a legal certainty." *Id.* at 42.  Even then,

19  the Supreme Court held that the plaintiffs failed to allege a "grave miscarriage of justice." *Id.* at 47.

20         VACC is nowhere close to meeting this demanding standard in its reliance on Rule 60(d)(1).

21  Bayat's speculation turned legal conclusions are not even comparable to what had befallen the

22  plaintiffs in *Beggerly*.  As expected, courts in this District have routinely held parties seeking Rule

23  60(d) independent action to that exacting standard.  *See, e.g.*, *Cty. of Marin*, 2006 WL 2586967, at

24  *1, 7 (finding that changes in environmental law do not entitle the County to set aside a judgment

25  which permitted the defendant to develop the land); *Zone*, 2013 WL 2252016, at *7 (finding no

26  strong showing that "vacating the judgment would prevent a grave miscarriage of justice" concerning

27  allegations that the plaintiffs agreed to the settlement only because a hitman was hired to kill them).

28  One rare case in which "sufficiently gross" injustice was found was a case where a forged document

13

1
2
3

was used to induce the plaintiff to accept a judgment against her. *Cty. of Marin*, 2006 WL 2586967, at *6 (citing *Marshall v. Holmes*, 141 U.S. 589 (1891)).  However, no forged document was involved here and there are no factual parallels to compel a finding against the weight of authority.

4
5

**D.    By Contrast, Undoing the Settlement and Dismissal Would Be Unjust to Davis and the Judicial System in General.**

6
7
8
9
10

All the Rule 60 procedural and substantive requirements discussed above further serve to protect the settlement process and to ensure fairness to a party like Davis.  Davis, like many parties having to defend against suits like this due to no faults of their own, acted in good faith throughout the settlement discussions, trusted VACC and its manifestation of consent, and relied on that finality to conduct his affairs.  Rather, VACC's reversal of the agreement would give rise to potential claims against it, such as promissory estoppel or detrimental reliance.

11
12
13
14
15
16
17

At any rate, Davis should not be penalized for the misconduct of VACC's prior counsel assuming there was even a misconduct.  "If an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice." *Link v. Wabash R. Co.*, 370 U.S. 626, 634 n.10 (1962).  "But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant." *See id.*

18

**II.    The Court Should Dismiss All Remaining Claims Pursuant to Rule 12(b)(6).**

19
20
21
22
23
24
25
26

The FAC fails to plausibly plead any factual or legal basis to support the other claims as well. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (to survive a Rule 12(b)(6) motion "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); Fed. R. Civ. P. 8(a).  Each of those remaining claims must be dismissed, as discussed in detail below.

27

**A.    The Second Cause of Action Fails Because VACC Had Settlement Authority and Entered into the Settlement.**

28

Contrary to the legal conclusions pled, the record and exhibits to the FAC amply show that

14

1    VACC's prior counsel had settlement authority.  Setting that aside, it cannot be disputed that Bayat

2    was the principal of VACC and *he himself* entered into the settlement agreement on behalf of VACC.

3    Therefore, whether or not VACC's prior counsel had settlement authority is of no effect here.

4              In *Doi v. Halekulani Corp.*, the Ninth Circuit was faced with the exact same facts and rejected

5    the same contorted arguments as made by VACC here.  276 F.3d 1131, 1137 (9th Cir. 2002).  The

6    parties in *Doi* agreed to settle an employment discrimination suit after court-facilitated settlement

7    discussions.  *Id.* at 1134.  The terms were read into the record in open court in the presence of the

8    plaintiff, the defendant, and their respective counsel.  *Id.*  The transcript of the court settlement in the

9    *Doi* decision essentially mirrors the one entered by Judge Kim in the Prior Suit.  *Compare id.* to Ex. 1

10   to FAC (showing that the court asked both counsel and the plaintiff whether they agree to the terms

11   just read).  Just like here, the parties intended to prepare documents to memorialize "the agreement

12   entered into in open court."  *Doi*, 276 F.3d at 1135.  The defendant later sent over the paperwork but

13   received no approval from the plaintiff.  *Id.*  The plaintiff later stopped communicating with her own

14   counsel and proposed to the defendant new terms that had not been previously agreed upon.  *Id.*

15   Alarmed, the defendant moved to enforce the court settlement, which the district court granted.

16             On appeal, the Ninth Circuit first considered the plaintiff's argument that she did not reach an

17   agreement with the defendant and that she did not give written authorization for her attorney to settle.

18   *Id.* at 1137-38.  The Ninth Circuit dismissed the attorney's supposed lack of authority as irrelevant

19   because it found no ambiguity that the plaintiff herself entered into a binding agreement.  *Id.* at 1137.

20   In making that finding, the court pointed out that the plaintiff said "Yeah" when asked whether she

21   agreed to the terms as stated.  *Id.* at 1138.  The Ninth Circuit also found no merit in her next

22   argument – that she only intended to be bound to an agreement in writing.  *Id.* at 1138.  That the

23   plaintiff answered in the affirmative in open court fully supported the existence of an agreement

24   whether or not the terms were reduced to writing.  *Id.* at 1138-39.

25             The parallels between what had transpired in *Doi* and this suit are remarkable, and mandate

26   that this suit should have the same outcome as *Doi*.  Among other things, when Bayat said "Yes" to

27   approve the terms Judge Kim read in open court, there was a binding and enforceable agreement.

28   That is true without regard to the red herring arguments directed to the settlement authority of

1    VACC's prior counsel.

2         **B.**      **The Third Cause of Action Fails Because There Was Mutual Assent.**

3             **1.**      **Recession is Not Available Under the Facts As Pled.**

4         The FAC erroneously states the legal conclusion that there was no mutual assent. However, a

5 contract can be rescinded for lack of mutual assent only for fraud in the inception or execution, which

6 "goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature

7 of his act, and actually does not know what he is signing, or does not intend to enter into a contract at

8 all." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996); s*ee also Hopkins & Carley,*

9 *ALC v. Thomson Elite*, No. 10-05806-LHK, 2011 WL 1327359, at *7 n.7 (N.D. Cal. Apr. 6, 2011).

10 One example is where one is asked to sign for handwriting purposes but was instead presented with a

11 paper contract one has no intention of entering into. Mutual assent would be lacking in such

12 circumstance. *See, e.g.*, *Operating Engineers Pension Tr. v. Gilliam*, 737 F.2d 1501, 1504-05 (9th

13 Cir. 1984) (providing a collective bargaining agreement for the contractor to sign when the contractor

14 asked to sign a form to become a union member); *Ford v. Shearson Lehman Am. Express, Inc.*, 180

15 Cal. App. 3d 1011, 1028 (1986) (finding fraud in the inception when the plaintiff was forced to sign

16 the agreement by those controlling his asset and businesses).

17         No facts going to fraud in the inception are alleged in the FAC. In contrast, mere regrets or

18 the purported misunderstanding that Bayat unreasonably concocted in his head does not negate

19 mutual assent. *See Rosenthal*, 14 Cal. 4th at 415 (noting that "***mutual assent is present*** and a

20 contract" is formed when "'the promisor knows what he is signing [even if] his consent is *induced* by

21 fraud") (emphasis added).[4] Here, there is no dispute that VACC agreed to a settlement, as

22 unequivocally shown by the court transcript, the FAC, and the record before this Court.

23             **2.**      **Contrary to VACC's Conclusory Assertions, the Settlement Agreement is**

24                    **Enforceable Because There Was Mutual Assent**

25         Separate from the claim for rescission, VACC's allegations directed to "lack of mutual assent"

26

---

[4] Consistent with case law, lack of mutual assent is thus not a technically correct legal basis for

27 rescission of a contract. Rather, it is a finding based on fraud in the inception, rendering the contract
"*void*," and rescission unnecessary. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415

28 (1996). In any event, it does not affect our analysis here because there was mutual assent.

also cannot support the claim that the settlement agreement is unenforceable.  In determining contract liability, courts have held that in "determining whether there has been a mutual consent to contract the courts are not interested in the subjective intent of the parties, but only in their objective intent – that is, what would a reasonable man believe from the outward manifestations of consent."  *Lorenz v. Bd. of Trustees Carpenters Health & Welfare Tr. Fund for Cal.*, No. 15-01430-WHO, 2016 WL 1365941, at *5 (N.D. Cal. Apr. 6, 2016) (citation omitted); *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1050 (2001).

In *Lorenz*, the plaintiff believed that she was signing a note in her capacity as president of the company and would not be personally liable for the note.  *Id.*  Reminiscent of Bayat's declaration here, the *Lorenz* plaintiff's declaration stated that the note "is devoid of any reference to 'joint and several liability,'" despite language identifying Lorenz "as an '[i]ndividual' Lorenz believed she was signing in her individual capacity as the President of BACF," and "the Trust Funds did not alert her to the possibility that she was agreeing to be personally liable."  *Id.*  The court first noted that the plaintiff failed to understand the legal consequences of signing the note "does not undermine consent."  *Id.* at *8.  The court then concluded that the plaintiff was liable under the note because she knew she was signing a note, and the note contained language indicating individual liability would apply.  *Id.* at *7 ("If the Note had a consequence that Lorenz did not fully understand (*e.g.*, personal liability), that does not mean that she did not know what type of agreement she was signing").

Focusing on "what would a reasonable man believe from the outward manifestations of consent," VACC has shown all the possible outward manifestations of assent to justify liability.  It made an offer of settlement without the "Representation Clause" that later became the agreement.  VACC declared to Judge Kim on the record that VACC agreed to the settlement terms and that no written agreement would be required.  VACC also agreed to waive all claims pursuant to Cal. Civ. Code § 1542.  VACC's alleged belief about the "Representation Clause" is a subjective intent akin to the belief of the *Lorenz* plaintiff.  And as in *Lorenz*, VACC's failure to understand the consequences of agreeing to the settlement and later filing a stipulated dismissal of the Prior Suit cannot "undermine consent."  2016 WL 1365941 at *8; *see also Rios v. Paramo*, No. 13-2455, 2015 WL 8492500, at *6 (S.D. Cal. Dec. 10, 2015) (enforcing settlement agreement despite allegation by a pro se plaintiff that

defense counsel misled him into settling the wrong case); *Signature Fin., LLC v. McClung*, No. 16-3621, 2017 WL 6940652, at \*9 (C.D. Cal. Oct. 6, 2017) (finding that the defendant's belief that there were no personal obligations involved and his purported lack of knowledge of a personal guaranty agreement he signed "cannot serve to prove lack of mutual assent" to escape liability).

**C.     The Fourth Cause of Action Fails Because the Settlement Agreement Contains All Material Terms.**

<u>First</u>, the facts of this case belie the legal conclusion that the "Representation Clause" is a missing material term.  As shown by the exhibits to the FAC and the records before this Court, VACC did not include this clause in the draft settlement proposal that it itself drafted.  Nobody alerted Judge Kim of the omission of this "material" term when she read the terms into the record.  Davis and his counsel also explicitly informed VACC that the clause was not part of the settlement agreement.  Ex. 6 to FAC, at 2.

<u>Second</u>, simply labeling an extraneous (and unreasonable) term as material is no basis to undo the finality of the Prior Suit or to render the settlement unenforceable.  In *Facebook, Inc. v. Pac. Nw. Software, Inc.*, the Wilklevosses similarly attempted to dodge their obligations under a settlement agreement, by arguing that the agreement is unenforceable for omitting certain material terms.  640 F.3d 1034, 1037 (9th Cir. 2011).  Specifically, for mutual release of claims, the settlement agreement provided that Facebook would acquire shares of another company, ConnectU, but did not include all the terms and documents "typical of acquisition documents."  *Id.*  The Ninth Circuit first explained that "a term may be 'material' in one of two ways: It may be a necessary term, without which there can be no contract; or, it may be an important term that affects the value of the bargain [and] omission of the former would render the contract a nullity."  *Id.* at 1037-38; *see also Citizens Utilities Co. v. Wheeler*, 156 Cal. App. 2d 423, 432-33 (1957) (arms-length acquisition of a private company's shares couldn't proceed because price was omitted from the contract).  "But a contract that omits terms of the latter type is enforceable under California law, so long as the terms it does include are sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages."  *Facebook*, 640 F.3d at 1038.

Rejecting the Wilklevosses's argument, the Ninth Circuit found that the settlement agreement

18

passed this test as it contained all the terms that would allow a court to determine breach and performance – namely that "[t]he parties agreed that Facebook would swallow up ConnectU, the Winklevosses would get cash and a small piece of Facebook, and both sides would stop fighting and get on with their lives." *Id.*

VACC and Bayat should learn from the Wilklevosses and "stop fighting and get on with their lives." The settlement agreement here easily passes the test set forth in *Facebook*, because it has all the terms for a court to determine breach or performance. The "Representation Clause" is completely unrelated and not necessary for a court to determine any of those issues. Many courts in this District faced with the same arguments made by VACC have found the settlement agreements to be enforceable. *E.g.*, *Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-00669-YGR, 2018 WL 3570664, at *4 (N.D. Cal. July 25, 2018) (finding the "failure [of a settlement in open court] to specify the 'mechanics of payment' does not mean that 'there can be no contract'"); *Mason v. MediFit Corp. Servs., Inc.*, No. 17-02542-JST, 2018 WL 1609374, at *3 (N.D. Cal. Apr. 3, 2018) (enforcing the settlement agreement and noting that "[i]f the terms were 'crucial and material to [the] end bargain,' [the plaintiff] would have placed those terms on the record").

Lastly, "Representation Clause" cannot be material because including it would be the antithesis of settlement. The settlement's primary purpose was to end all issues related to the Prior Suit and have the parties move on with their lives. To that end, VACC (and Davis) necessarily had to release its claims in the Prior Suit, including claims of misappropriation. Inserting this clause would essentially vitiate that mandatory release of claims and render the settlement meaningless, since some of the very allegations VACC had sued upon would be not then be released, but rather would continue on with a potential life of their own after the settlement. Further, it cannot be underscored enough that VACC waived all known and unknown claims pursuant to Cal. Civil Code § 1542. Having a "Representation Clause" would directly contradict that term of the agreement. *See, Spitzer v. Aljoe*, No. 13-05442-MEJ, 2016 WL 3279167, at *11 (N.D. Cal. June 15, 2016) (noting that if "plaintiff should be allowed to rescind the settlement" on the basis of documents later produced by the defendant as a settlement condition, it would "frustrate[] the nature of settlement agreements"); *id.* ("A party to a settlement agreement may not seek to rescind it by proving the merits of his original

1   claim and then establishing that an erroneous assessment by him of that claim led to the settlement").

2   **D.   The Fifth Cause of Action Fails Because the Settlement Agreement is Enforceable Without a Written Agreement.**

3   FAC's allegation – "that a written agreement to formalize the terms of the settlement was

4   necessary" – grossly misrepresents the stipulation of dismissal. *See* FAC ¶¶ 92-93. The relevant

5   excerpt of the stipulation states:

6       1. The Parties have settled this case pursuant to a confidential settlement;
7       2. The Parties will prepare a written settlement agreement, which shall be
          moderated by Magistrate Judge Sallie Kim in the event of unresolvable
8          disagreements on its terms . . . .

9   Ex. 5 to FAC. The Court must denounce VACC's incredulous attempt at artful pleading to contort a

10  task the parties plan to undertake – preparation of a written agreement – into a "material term" of the

11  stipulated dismissal. The stipulation explicitly states that the case was already settled. Even assuming

12  that a written agreement is necessary (which it is not), VACC itself is the party holding up the

13  preparation of the written agreement by refusing to sign a written document that accurately reflects

14  the parties' agreement. That a party can undo a settlement and reopen a dismissed case by simply

15  violating a "term" in the stipulated dismissal is without merit and defies all reason.

16  In any event, this is another one of VACC's red herring pseudo-legal theory. Numerous

17  courts have held that a plan to memorialize a settlement agreement read into the record in open court

18  does not make a written agreement necessary for enforcement. *E.g.*, *Golden v. Cal. Emergency*

19  *Physicians Med. Grp.*, No. 10-00437-JSW-DMR, 2011 WL 13100466, at *4 (N.D. Cal. June 23,

20  2011) (holding "that even if the parties intended to reduce the agreement to writing at a later time, the

21  agreement was immediately binding and enforceable"); *Guzik Tech. Enter., Inc. v. W. Digital Corp.*,

22  No. 11-03786-PSG, 2014 WL 12465441, at *5 (N.D. Cal. Mar. 21, 2014) (noting that "[t]he Ninth

23  Circuit has an expansive view of what it means to settle a case and California has a strong policy in

24  favor of enforcing settlement agreements," and that "California law permits parties to bind themselves

25  to a contract, even when they anticipate that 'some material aspects of the deal [will] be papered

26  later'"); *Prod. & Ventures*, 2018 WL 3570664, at *1 (listing cases stating the same).

27

28

**E.     The Sixth Cause of Action Fails Because There is No Support for the Rescission of the Settlement Agreement under California Civil Code Section 1689.**

VACC relies on the same allegations discussed above to argue for rescission under California

Civil Code Section 1689, relevant subsections of which are below.

> (b) A party to a contract may rescind the contract in the following cases:
> (1) If the consent of the party rescinding, or of any party jointly
> contracting with him, was given by mistake, or obtained through
> duress, menace, fraud, or undue influence, exercised by or with the
> connivance of the party as to whom he rescinds, or of any other
> party to the contract jointly interested with such party.

Cal. Civ. Code § 1689 (b)(1).  The FAC contains zero factual support that Davis exercised "duress,

menace, fraud, or undue influence" to obtain VACC's consent.  The FAC alleged "misrepresentation"

made by VACC's prior counsel, but VACC's prior counsel was not "conniving" or "jointly interested

with" Davis.  This baseless claim should be dismissed for this reason alone.

**1.     The FAC Does Not Properly Allege Mistake of Fact.**

The FAC also fails all other legal elements of "mistake" to warrant rescission.  "[C]ourts will

not set aside contractual obligations [] merely because one of the parties claims to have been ignorant

of, or to have misunderstood, the provisions of the contract."  *Hedging Concepts, Inc. v. First All.*

*Mortg. Co.*, 41 Cal. App. 4th 1410, 1421 (1996) (citation omitted).  According to the FAC, VACC

mistakenly understood that the agreement contains a representation clause although Davis never

understood the agreement that way and never shared the belief.  *See* Ex. 6 to FAC, at 2 (Davis's

counsel to Bayat, "[w]hat you are asking for in your email below is not part of the terms of our

binding agreement. As I also explained previously, the case has been dismissed by both sides with

prejudice and the parties agreed to a waiver of California Civil Code Section 1542.").

VACC thus committed no mistake of fact but rather, a subjective misinterpretation, which is

not a ground for rescission.  *Hedging Concepts*, 41 Cal. App. 4th at 1416, 1421 (finding subjective

misinterpretation where the party thought that the contract only required introducing business

prospects when it actually required completing the transactions with those prospects).  Many courts

have denied rescissions based on similar circumstances.  *E.g.*, *Salimi v. BMW Fin. Servs. NA, LLC*,

No. 12-01754-JSW, 2017 WL 4570367, at *8 (N.D. Cal. Sept. 29, 2017) (denying rescission based

on mistake of fact concerning the definition of a settlement class); *Stavrinides v. Vin Di Bona*, No.

17-05742-WHO, 2018 WL 317821, at *2 (N.D. Cal. Jan. 8, 2018) (denying rescission where the plaintiff signed an agreement without legal counsel and without understanding the terms, and further noting that it was not unconscionable to enforce the agreement including the forum selection clause); *Spitzer*, 2016 WL 3279167, at *11 (denying rescission based on an alleged mistake realized by the plaintiff after receiving documents produced after the settlement).

**F.    The Seventh and Eighth Causes of Action Both Fail Because Reformation of the Settlement Agreement and Declaratory Judgment Are Without Legal or Factual Basis.**

VACC seeks "Reformation of Settlement Agreement under Cal. Civ. Code § 3399" and declaratory judgment.  VACC's allegations in support of these claims duplicate those of the Rule 60 request and all its prior "causes of action."  California Civil Code section 3399 states:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

VACC provides no factual allegation (and it cannot) supporting that 1) "the parties shared a mutual intention" to include that clause; 2) Davis knew or suspected VACC's purported "mistake;" and 3) VACC committed a "mistake," with all the required legal elements discussed above.  *See Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.*, No. 15-02592-SI, 2016 WL 4426901, at *6 (N.D. Cal. Aug. 22, 2016); *see also Mayer Hoffman McCann, P.C. v. Camico Mut. Ins. Co.*, 161 F. Supp. 3d 858, 872 (N.D. Cal. 2016) (refusing reformation).

**III.    Bad Faith, Undue Delay, and Futility Counsel Against Leave to Amend.**

As indicated above, no amount of repleading can cure the fatal defects in VACC's position, and thus any further amendment would be futile.  "It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).  Courts generally allow a party to amend its pleading except when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." *Sonoma Cty. Ass'n of Retired*

*Employees v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citation omitted). "[T]he consideration of prejudice to the opposing party carries the greatest weight." *Id.* (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

Notably, very soon after he was finally (and untimely) served, Davis's counsel alerted VACC's counsel to the many deficiencies of its initial Complaint during a meet and confer prior to moving to dismiss. *See* Ren Decl. VACC decided to stand on its Complaint, only to then amend it after the motion to dismiss. As set forth above, VACC's desire for a "Representation Clause" was caused by remorse or miscommunication with its prior counsel, neither of which is actionable. The pseudo-legal theories in the FAC are further evidence that no amendment can transmute its nonviable claims into cognizable ones, and no amendment consistent with the prior pleadings would ever render the complaint sufficient. *See Shirley v. Univ. of Idaho, Coll. of Law*, 800 F.3d 1193, 1194 (9th Cir. 2015). When the Court strips away the legal conclusions, the claims are no claims at all.

Permitting VACC to amend would only encourage its bad faith strategy and exacerbate the prejudice to Davis. VACC filed this lawsuit in hopes of resurrecting the prior dispute to prolong the harassment and to drain Davis's financial resources. This barrage of bad faith attacks and abuse of the judicial process must end.

## IV.    The Court Should Dismiss this Suit for Untimely Service Pursuant to Rule 12(b)(5).

Rule 12(b)(5) provides for dismissal if service of process was not timely made in accordance with Federal Rule of Civil Procedure 4. When VACC applied for an extension for service on October 11, 2018 for a complaint filed on June 11, 2018, the 90-day deadline had already passed. *See* Fed. R. Civ. Proc. 4(m). This Court denied that application the very next day. Proof of service appears on the docket on October 19, 2018, purportedly showing that Davis was served on October 17, 2018, which was about 129 days after the Complaint was filed, making the service untimely. The suit should be dismissed on this basis.

"[F]actors 'like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service'" do not weigh in favor of extension in this case. *See Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007). Contrary to VACC's claim in its application for extension that there was "good cause" for its delay, the recited sequence of events curiously evinces a lackadaisical

attempt.  VACC itself created an issue of delay and prejudice by waiting until the month when the Rule 60(b) -time bar would have run to file this suit.  *See Dillon v. W. Pub. Corp.*, 553 F. App'x 669, 670-71 (9th Cir. 2014) (affirming dismissal for failing to timely serve because the plaintiff "created this issue by waiting to file his claim until the day before the statute of limitations would lapse).  In addition, VACC did not make its first attempt for service until August 2018, almost two months after the Complaint was filed.  The record also fails to show that VACC's counsel ever reached out to Davis' Prior Suit counsel to complete service, despite multiple instances of communication with them. VACC stated in its application for extension of time that Davis was an "elusive" defendant, falsely intimating that he was evading service.  Although Davis's home indeed underwent construction in August 2018, he did not evade service, and there is no evidence to support that bald speculation.

Moreover, VACC's belated and untimely service prejudices Davis.  The service was more than one year past the June 2017 settlement on the record, and the July 2017 stipulated dismissal. Davis relied on the case dismissal and its one-year mark as a guarantee of peace and security for his personal life and start-up business.  Also, the settlement plainly has inflicted no harm on VACC, since both parties maintained business as usual since the Prior Suit's dismissal.  Permitting VACC to serve past the deadline would undermine the safeguards that the federal rules of procedure and statute of limitations aim to afford litigants.

## V.    The Court Should Award Davis His Reasonable Attorneys' Fees In Its Sound Discretion, Including Pursuant to California Anti-SLAPP. [5]

Although VACC has amended its initial Complaint to omit its prior claims which were subject to be stricken under California's anti-SLAPP statute, that voluntary dismissal of SLAPP claims makes Davis the "prevailing" party, who is entitled to an award of his reasonable attorneys' fees.  Cal. Civ. Code § 426.16(c)(1).  Davis therefore renews his prior request for attorneys' fees given that he was required to move to strike before VACC removed the offending claims.

---

[5] Granting a 12(b)(6) motion does not render an anti-SLAPP motion moot.  *Robinson v. Alameda Cty.*, 875 F. Supp. 2d 1029, 1046 (N.D. Cal. 2012) (citing *Sylmar Air Conditioning v. Pueblo Contracting Servs., Inc.*, 122 Cal. App. 4th 1049, 1054-55 (2004)); *Sylmar Air*, 122 Cal. App. 4th at 1055 ("Nor is the issue of attorney fees and costs rendered moot even by an involuntary dismissal after a demurrer is sustained without leave to amend").

"A defendant that brings an anti-SLAPP motion to strike may 'prevail,' even if the court did not actually grant the motion. Where the plaintiff dismisses the alleged SLAPP before the court rules on a pending motion to strike, the mooting of the merits of the motion does not bar a defendant from recovering attorneys' fees." *Law Offices of Bruce Altschuld v. Wilson*, 632 F. App'x 321, 323 (9th Cir. 2015). Therefore, "even if the pleading is amended to remove the targeted claim, the moving party may still be entitled to attorneys' fees and costs incurred in bringing the anti-SLAPP motion, per section 425.16(c)." *Semiconductor Equip. & Materials Int'l, Inc. v. The Peer Grp., Inc.*, No. 15-00866-YGR, 2015 WL 5535806, at *2 (N.D. Cal. Sept. 18, 2015); *Pfeiffer Venice Properties v. Bernard*, 101 Cal. App. 4th 211, 217 (2002).

VACC's initial Complaint asserted unspecified fraud committed by Davis to attack his right to negotiate a settlement. Prior to moving to dismiss, Davis wrote to VACC to explain how its claims are meritless and subject to California's anti-SLAPP statute, including the many authorities that were eventually cited in Davis's first motion to dismiss. *See Ren Decl.* The exchange was not fruitful as VACC insisted on standing on its initial Complaint. *Id.* Only after Davis moved to strike the initial Complaint did VACC amend to remove those SLAPP claims. *Id.*

This Court thus should award reasonable attorneys' fees. *See, e.g., Art of Living Found. v. Does 1-10*, No. 10-05022-LHK, 2012 WL 1565281, at *25 (N.D. Cal. May 1, 2012) (concluding that removing the SLAPP "claims is tantamount to a voluntary dismissal of those claims, which would likely have become subject to another anti-SLAPP motion" and "that Defendants are entitled to move for attorneys' fees under § 425.16(c)(1) [] after judgment is entered"); *Plevin v. City & Cty. of San Francisco*, No. 11-02359-CW, 2011 WL 3240536, at *4 (N.D. Cal. July 29, 2011); *Mireskandari v. Associated Newspapers, Ltd.*, 665 F. App'x 570, 571-72 (9th Cir. 2016); *Rutherford v. Palo Verde Health Care Dist.*, No. 13-01247, 2014 WL 12634510, at *5 (C.D. Cal. May 13, 2014). *But cf. Garcia v. Allstate Ins.*, No. 12-00609, 2012 WL 4210113, at *13 (E.D. Cal. Sept. 18, 2012).

## CONCLUSION

For all of the foregoing reasons, Davis's motion should be granted, his fees awarded, and the parties instructed to go on about their business under the already-existing, judicially-approved resolution of their prior disputes.

Respectfully submitted,

Dated: January 25, 2019                    HOLLAND LAW LLP


                                    By:  /s/ Pei Hsien Ren
                                        Pei Hsien Ren
                                        Attorneys for Defendant J. Byron Davis