UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VACC, INC., <br><br>        Plaintiff, <br><br>    v. <br><br>JON BYRON DAVIS, <br><br>        Defendant. | Case No. 18-cv-03454-JCS <br><br>**ORDER GRANTING MOTION TO DISMISS AND RECOVER ATTORNEYS' FEES** <br><br>Re: Dkt. No. 56 |

## I. INTRODUCTION

Plaintiff VACC, Inc. filed this action against Defendant Jon Byron Davis seeking to amend a judgment entered in a previous case before this Court between the same parties. That case was dismissed by stipulation after the parties placed a settlement agreement on the record. Davis moves to dismiss and for attorneys' fees under California's "anti-SLAPP" statute governing strategic lawsuits against public participation. The Court held a hearing on March 29, 2019. For the reasons discussed below, Davis's motion is GRANTED.[1]

## II. BACKGROUND

The parties' previous lawsuit involved claims related to patent law and theft of trade secrets. *See generally VACC, Inc. v. Davis*, No. 16-cv-01350-JCS (N.D. Cal.) ("*VACC I*"). The parties engaged in multiple settlement conferences with the Honorable Sallie Kim, and Judge Kim placed a settlement on the record on June 30, 2017 with Davis, VACC's president and principal Ahmad Bayat, and attorneys for both parties appearing by telephone. *See VACC I*, ECF Doc. No. 64. The record includes the following remarks by Judge Kim and the parties:

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

|   |   |
|---|---|
| 1 | THE COURT: . . . This is a binding oral settlement agreement. The parties may, but are not required, to have a written settlement agreement. |
| 2 | |
| 3 | . . . |
| 4 | THE COURT: Okay, I'm going to go through the terms. |
| 5 | So the parties will file their dismissals with prejudice by July 7th, 2017. [Confidential term omitted],[2] and each side will bear its own attorneys' fees and costs. Both sides will provide each other with a release of all claims, and none of them known as of today, and they will each explicitly waive Civil Code Section 1542. |
| 6 | |
| 7 | |
| 8 | [Confidential terms omitted.] |
| 9 | The parties also agree mutually [confidential terms omitted.] |
| 10 | And so let me start with plaintiff. We'll start with plaintiff's counsel. Is that your understanding of the settlement terms? |
| 11 | MR. KANACH: This is [plaintiff's counsel] Michael Kanach, and yes, it is. |
| 12 | |
| 13 | THE COURT: Thank you, and plaintiff himself, can you also state that you approve of this? |
| 14 | MR. BAYAT: Yes. |
| 15 | [Defense counsel raised a point regarding retention of jurisdiction.] |
| 16 | THE COURT: Yeah, let me go back to that, then. So on plaintiff's side, do you agree that this Court will retain jurisdiction over this settlement agreement as stated? |
| 17 | |
| 18 | MR. BAYAT: Yes. |
| 19 | MR. KANACH: Yes, and this is Michael Kanach. |
| 20 | . . . |
| 21 | THE COURT: Good. Thank you very much. I commend you all for your hard work. I know this has been a very difficult case and I wish all of you the best of luck in the future, and this matter is concluded. |
| 22 | |

1st Am. Compl. ("FAC," dkt. 42) Ex. 1 at 4–6. Davis and his attorney also agreed to the terms of

the settlement as stated by Judge Kim. *See id.*

---

[2] The parties moved to file portions of the transcript under seal and redacted those portions from the public docket to preserve the confidentiality of the settlement terms. Because those terms are not relevant to the present motion, they are omitted from the excerpts included in this order. None of the redacted terms suggest that Davis agreed to include as part of the settlement a representation that he did not take documents or information from VACC. The pending motions to file under seal (dkts. 52 and 59) are GRANTED.

2

The parties thereafter filed a stipulation of dismissal with prejudice, and the Court granted that stipulation, issuing the following order consisting of language stipulated by the parties:

> The Court, having considered the stipulation of the Parties, and good cause appearing therefor, orders as follows:
>
> 1. The entire action of all parties and causes of action is dismissed with prejudice pursuant to Federal Rule of Civil Procedure Rule 41(a)(2);
>
> 2. The Parties shall each bear their own attorneys' fees and costs;
>
> 3. This Court and Magistrate Judge Sallie Kim shall retain jurisdiction to enforce the terms of the settlement agreement.

*VACC I*, ECF Doc. No. 66 ("Stip. & Order").

Following dismissal, VACC's former counsel "abandoned its representation of" VACC. FAC ¶ 4. As the parties attempted to negotiate a written settlement agreement, it became clear that Bayat believed the agreement would include a representation by Davis that he did not take confidential documents from VACC, preserving VACC's right to take further action if that representation was false. According to VACC, its former counsel had repeatedly represented, both before and after the settlement was placed on the record, that the written settlement agreement would include such a representation, which Bayat repeatedly insisted was necessary for VACC to agree to the deal. *See* FAC ¶¶ 3, 21–28, 30–32. Email communications attached to the complaint support VACC's allegations of such assurances by former counsel. *See* FAC Exs. 2, 3 (emails from Bayat to Judge Kim more than two months after dismissal, forwarding pre-settlement correspondence between Bayat and his attorneys). For example, Bayat's attorney David Jordan of the Gordan & Rees law firm stated in a June 28, 2017 email, two days before the parties put their settlement terms on the record:

> He will represent in the agreement that he did not remove items and if he did and if he uses them then you have the right to sue for breach of that representation in the settlement. It's that simple.

*Id.* Ex. 2 at 1.

After the settlement was placed on the record and the parties stipulated to dismissal, Davis refused to add such a term to the agreement, asserting that it was not part of the agreement placed on the record before Judge Kim. FAC ¶¶ 42–43, 44–49 & Ex. 4 (email from Davis's attorney to

3

1 Judge Kim forwarding correspondence with Bayat). VACC alleges that "[c]ounsel for [Davis] acknowledged and understood that a written settlement agreement was 'a required term of settlement.'" *Id.* ¶ 44; *see also id.* Ex. 4 at 7 ("Entering into the written agreement to formalize the terms of the settlement is a required term of settlement that we all read onto the record with Judge Kim.").

VACC's operative complaint includes eight "causes of action," one of which is a federal rule allowing a party to bring a motion, and several of which would be better characterized as theories of contract invalidity: (1) "Fed. R. Civ. P. 60(b)(1), 60(b)(6), and 60(d)(1)," FAC ¶¶ 50–62; (2) "Lack of Settlement Authority," *id.* ¶¶ 63–70; (3) "Lack of Mutual Assent," *id.* ¶¶ 71–79; (4) "Material Terms Missing—Settlement Agreement," *id.* ¶¶ 80–87; (5) "Material Terms Missing—Stipulation of Dismissal," *id.* ¶¶ 88–95; (6) "Rescission Pursuant to Cal. Civ. Code § 1689," *id.* ¶¶ 96–110; (7) "Reformation Pursuant to Cal. Civ. Code § 3399," *id.* ¶¶ 111–24; and (8) "Declaratory Judgment," *id.* ¶¶ 125–29. VACC seeks rescission of the settlement agreement placed on the record, the stipulation of dismissal, and the order dismissing the case, among other similar forms of relief. *Id.* at 18 (prayer for relief).

## III. ANALYSIS

### A. Legal Standard for Motions to Dismiss Under Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

4

would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint "'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. Intent and Authority

Two of VACC's arguments that span several of its claims are that VACC's counsel did not have authority to enter the settlement agreement on its behalf, and that Bayat did not consent to the settlement agreement without the representation clause. These arguments are foreclosed by Ninth Circuit precedent.

In an analogous case, the Ninth Circuit held that a plaintiff who agreed to terms stated on the record was not entitled to later disavow those terms, and that a district court did not abuse its discretion in enforcing such an agreement and assessing sanctions for the plaintiff's failure to sign an agreement memorializing the settlement placed on the record, without holding any sort of evidentiary hearing to consider the plaintiff's intent. *See generally Doi v. Halekulani Corp.*, 276 F.3d 1131 (9th Cir. 2002). There, the parties informed the district court that they had reached an agreement, and at the court's request, defense counsel recited the terms of the settlement. *Id.* at 1134. The following exchange then occurred on the record:

THE COURT: Is that agreed to?

> PLAINTIFF'S COUNSEL: Yes, Your Honor. I understand that those are the terms of the settlement.
>
> THE COURT: Can I have you also, Ms. Doi, state that you do agree to these terms?
>
> PLAINTIFF: After I see the documents I—
>
> THE COURT: Well—
>
> PLAINTIFF'S COUNSEL: The terms are—
>
> THE COURT: The terms, as stated right now, do you agree to those?
>
> PLAINTIFF: I stated.
>
> THE COURT: You do agree?
>
> PLAINTIFF: Yeah.

*Id.*

The plaintiff later refused to sign a stipulation or written settlement agreement memorializing those terms and instead proposed different terms to the defendant. *Id.* at 1135. The Ninth Circuit held that "there was no need for the court to engage in factual inquiries to determine whether Doi agreed to be bound by the terms of the agreement. Any question as to Doi's intent to be bound was answered when she appeared in open court, listened to the terms of the agreement placed on the record, and when pressed as to whether she agreed with the terms, said 'yeah.'" *Id.* at 1138. "[T]he parties dispelled any such questions in open court." *Id.* at 1139. The Ninth Circuit also rejected an argument that Doi's counsel lacked authority to settle the case on her behalf, observing that any question of the attorney's authority was "irrelevant" because "certainly, Doi herself had the power to enter into a binding agreement," and the transcript revealed that she did so. *Id.* at 1137. The Ninth Circuit concluded as follows:

> This, however, is not the typical case [where parties exchanged proposals and disagreed as to whether they reached an agreement]. Rather, here, the plaintiff made a binding settlement agreement *in open court:* when read the terms of the agreement, and asked if she agreed with them, Doi simply responded, "yeah." At a time where the resources of the federal judiciary, and this Circuit especially, are strained to the breaking point, we cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her. The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation.

6

*Id.* at 1141.

In this case, Bayat's statement of assent was even clearer than Doi's. Bayat expressed no hesitation or desire to review documents before agreeing to the terms as recited. FAC Ex. 1.

VACC distinguishes *Doi* only on the basis that the plaintiff in that case sought to alter terms stated on the record, while VACC argues that here, "the recited terms were *incomplete*, and because of Former Counsel's repeated assurances, the missing term was always understood by Mr. Bayat to be part of the agreement." Opp'n (dkt. 60) at 14–15. Such a distinction could only be relevant, if ever, where the terms as stated on the record allowed for a reasonable inference that the agreement entered on the record included additional terms not explicitly stated. That is not the case here.

Judge Kim informed the parties that they were entering "a binding oral settlement agreement," that a subsequent written agreement was "not required," and that she was "going to go through the terms." FAC Ex. 1 at 4. After reciting those terms, none of which included the representation clause Bayat had sought to include, Judge Kim asked VACC's attorney Michael Kanach whether "that [was his] understanding of the settlement terms," and asked Bayat if he could "also state that [he] approv[ed] of this," and both answered unequivocally in the affirmative. *Id.* at 5. When defense counsel raised the question of continuing jurisdiction, Judge Kim asked VACC's representatives if they "agree[d] that this Court will retain jurisdiction over this settlement agreement *as stated*," and both Bayat and Kanach answered, "Yes." *Id.* at 6 (emphasis added). Taking these statements together, there is no basis to conclude that the terms as stated by Judge Kim were incomplete; that, in agreeing to those terms, either party was agreeing to any further terms not stated on the record; or that the agreement stated on the record would not bind the parties to the terms stated. Accordingly, Bayat's understanding that an additional unstated term would be part of any final agreement in fact *conflicted* with the agreement stated on the record—for example, with Judge Kim's statement that the oral agreement would be binding regardless of whether the parties reached a subsequent written agreement, and with her statement that the terms she recited were "the settlement terms." FAC Ex. 1.

The other difference between this case and *Doi* is that VACC alleges here, supported by

email correspondence, that—contrary to Judge Kim's recitation of the terms and Bayat's agreement to those terms—Bayat in fact believed and had been told by his attorneys that the representation clause would be part of the settlement. California courts considering assent to a contract use "'an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.'" *Quantification Settlement Agreement Cases*, 201 Cal. App. 4th 758, 816–17 (2011) (quoting *Leo F. Piazza Paving Co. v. Bebek & Brkich*, 141 Cal. App. 2d 226, 230 (1956)).[3] A party's discussion with its own lawyers, shielded by attorney-client privilege and not shared with the opposing party, is not an "outward manifestation" within the meaning of that framework. At the time of the agreement, Bayat outwardly and objectively manifested his assent by stating that he agreed to the terms of settlement recited by Judge Kim, and understood them to be correct. Under *Doi*, that is the beginning and the end of the inquiry. *See* 276 F.3d at 1139 ("[T]here was no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court.").

*Doi* is not materially distinguishable, and this Court is bound by that precedent to hold that VACC, through its principal Bayat, consented to the agreement stated on the record. That conclusion informs and in large part controls the following analysis of Bayat's claims.

### C. Claim Under Rule 60

VACC's first claim cites three provisions of Rule 60 of the Federal Rules of Civil Procedure: subparts (b)(1), (b)(6) and (d)(1). *See* FAC ¶¶ 50–62.

Rule 60 governs relief "from a final judgment, order, or proceeding," and sets forth specific grounds for relief at subparts (1) through (5). Of those, VACC invokes subpart (b)(1), which provides that relief may be granted "[o]n motion and just terms" based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Court need not address whether bringing this separate action under Rule 60(b)(1) is permissible rather than a

---

[3] "The construction and enforcement of settlement agreements are governed by principles of local [state] law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989).

8

motion as specified by text of this provision, because even assuming that it is, VACC is not entitled to relief.

"'Neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1).'" *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir. 2006) (quoting *Engleson v. Burlington N. R.R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992)). This rule "is not intended to remedy the effects of a litigation decision that a party later comes to regret through subsequently-gained knowledge that corrects the erroneous legal advice of counsel," even where such advice arose from "intentional attorney misconduct" that might warrant a malpractice claim. *Id.* In *Latshaw*, the Ninth Circuit held that even if the party seeking relief had "genuinely believed" that circumstances required her to accept a detrimental settlement offer, relief was not available because her "mistakes, if true, arose from attorney misconduct." *Id.* Here, similarly, Bayat's alleged belief that a subsequent written agreement would include terms beyond those recited by Judge Kim arose from VACC's attorney David Jordan's advice that such a representation would appear in the agreement, in conjunction with VACC's attorney Michael Kanach's[4] (and Bayat's own) failure to state such a term as a condition of the settlement placed on the record. FAC Ex. 2. This "carelessness on the part of [Bayat] or his attorney[s]" does not "provide grounds for relief under Rule 60(b)(1)." *See Latshaw*, 452 F.3d at 1101.

VACC argues that, "unlike in in *Latshaw*, *there is no 'regret' here or misunderstanding of the legal consequences of Mr. Bayat's deliberate acts*." Opp'n at 10 (emphasis in original). Such an argument cannot be squared with the alleged facts of the case. Bayat stated on the record that he agreed to terms, despite such terms omitting a term he believed was necessary for VACC to settle the case. Either he misunderstood the legal consequence of that agreement, which bound VACC to those terms without need for the representation Bayat sought from Davis, or he regrets that consequence. Under *Latshaw*, the fact that Bayat's misunderstanding arose from the misleading conduct of VACC's own attorneys does not establish grounds from relief under Rule

---

[4] Kanach was a participant in the email exchange in which Bayat repeatedly insisted on a representation clause and Jordan repeatedly stated that it would be included in the agreement. FAC Ex. 2.

9

60(b)(1)—to the contrary, it precludes such relief. VACC also argues that its attorneys lacked authority to enter a settlement agreement omitting the representation clause. Opp'n at 8–9. Even if that were true, any question of the attorneys' authority is irrelevant, because Bayat undisputedly had authority to act for VACC when he, separately from the attorneys, accepted the terms stated on the record. *See Doi*, 276 F.3d at 1137.

The next provision of Rule 60 that VACC invokes, subpart (b)(6) is a "so-called catch-all provision" that allows a court to set aside an order or judgment for "any other reason that justifies relief." *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008); Fed. R. Civ. P. 60(b)(6). That provision "is to be 'used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.'" *Harvest*, 531 F.3d at 749 (quoting *Latshaw*, 452 F.3d 1097, 1103 (9th Cir. 2006)). "Accordingly, a party who moves for such relief 'must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with . . . the action in a proper fashion.'" *Latshaw*, 452 F.3d at 1103 (quoting *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002)). Whether to accept the settlement terms stated by Judge Kim was within VACC's control: VACC's principal Bayat attended the hearing, was specifically asked if he agreed to the terms, and stated that he did so agree. FAC Ex. 1. To the extent Bayat might have harbored any doubt as to whether it would have been appropriate to raise terms that he believed were omitted from Judge Kim's recitation, such doubts should have been dispelled by defense counsel's request to add a term regarding continuing jurisdiction, at which point Judge Kim confirmed that both parties in fact agreed to that additional term. *See* FAC Ex. 1 at 6. Bayat's error is not the sort of "extraordinary circumstance" warranting relief under Rule 60(b)(6).[5]

The third and final provision of Rule 60 on which VACC relies is subpart (d)(1), which in

---

[5] *See Latshaw*, 452 F.3d at 1104 ("Latshaw knowingly and voluntarily signed the Rule 68 acceptance. Though Latshaw's decision may have been driven by inept or erroneous advice or conduct of her counsel, neither the alleged negligence at issue nor the purported fraud on the court [of Latshaw's out-of-state attorney allegedly forging her local counsel's signature on a stipulation] fall among those exceptional circumstances meriting Rule 60(b)(6) relief.").

relevant part clarifies that Rule 60 "does not limit a court's power to . . . entertain an independent action to relieve a party from a judgment, order, or proceeding." Fed. R. Civ. P. 60(d)(1). As VACC acknowledges, *see* Opp'n at 12, an action under this provision is "available only to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998).[6] For the same reasons addressed by the *Latshaw* court in the similar context of Rule 60(b)(6) and discussed above, Bayat's acceptance of the agreement stated on the record in reliance on misleading advice from VACC's attorneys is not a grave miscarriage of justice requiring extraordinary relief. *See Latshaw*, 452 F.3d at 1103–04 (holding that a party's acceptance of a settlement agreement based on "inept or erroneous advice or conduct of her counsel" did not meet the standard of "manifest injustice" and "exceptional circumstances" necessary for relief).

VACC relies primarily on three Ninth Circuit decisions for its arguments regarding Rule 60: *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010), *Community Dental Services v. Tani*, 282 F.3d 1164 (9th Cir. 2002), and *Callie v. Near*, 829 F.2d 888 (9th Cir. 1987). Of those cases, *Tani* involved efforts to set aside a default judgment, which the court in *Latshaw* distinguished because default judgments are disfavored while settlement under Rule 68 is "actively supported by courts." *See Latshaw*, 452 F.3d at 1103. *Lal* expressly relied on *Tani*, analogizing the judgment for failure to prosecute at issue there to the default judgment in *Tani* as a disfavored form of judgment based on one party's inaction, and distinguishing *Latshaw* as inapplicable because *Latshaw* concerned a judgment based on settlement. *Lal*, 610 F.3d at 524–25. Because the judgment at issue in this case was based on a settlement, *Latshaw* controls, and neither *Tani* nor *Lal* applies.

As for *Callie*, the Ninth Circuit held there that a district court was required to conduct an evidentiary hearing to determine whether the parties had reached a binding agreement in the course of exchanging written proposals, none of which received the express endorsement of both parties. *See generally* 829 F.2d 888. The court in *Doi* distinguished *Callie* as inapplicable where

---

[6] VACC also cites *Beggerly* for a list of five elements purportedly sufficient to warrant relief under Rule 60(d)(1). Opp'n at 12–13. The elements on which VACC relies were used by the Fifth Circuit, and appear in the Supreme Court's opinion only to explain the Fifth Circuit's decision, which the Supreme Court reversed without clearly endorsing or rejecting that list of elements. *See Beggerly*, 524 U.S. at 41 (quoting *Beggerly v. United States*, 114 F.3d 484, 487 (5th Cir. 1997)).

11

the parties expressly assented to terms of a settlement agreement stated on the record. *Doi*, 276 F.3d at 1138–39. Because Bayat unambiguously agreed on behalf of VACC to the terms stated by Judge Kim, *Doi*, not *Callie*, controls here.

Accordingly, for the reasons stated above, and because the cases on which VACC relies do not apply to the circumstances of this case, VACC is not entitled to relief under Rule 60 with respect to its commitment to settle the case on the terms stated on the record.

### D. Invalidity Theories

VACC's second through fourth claims present theories of why VACC believes the settlement agreement is invalid. It is not clear that these are "causes of action" as that term is generally understood. VACC's amended complaint cites no statutory authority for bringing an action based on any of these theories. The Court nevertheless addresses them in turn.

#### 1. Lack of Settlement Authority

VACC's second claim is for "lack of settlement authority." FAC ¶¶ 63–70. As discussed above, the authority of VACC's attorneys is irrelevant, because Bayat agreed on the record to the settlement terms recited by Judge Kim. *See Doi*, 276 F.3d at 1137. VACC has not argued that Bayat lacked authority to bind VACC to a settlement.

#### 2. Lack of Mutual Assent

VACC's third claim is for "lack of mutual assent." FAC ¶¶ 71–79. Regardless of Bayat's subjective intent, mutual assent is determined from objective conduct. *Quantification Settlement Agreement Cases*, 201 Cal. App. 4th at 816–17. Bayat's statement on the record is sufficient evidence of his assent to the terms as stated, and no further inquiry to his subjective intent is appropriate. *See Doi*, 276 F.3d at 1139.

VACC argues that the theory of fraud in the inception establishes a lack of true assent. Opp'n at 15–17. California law provides that if there is fraud in the inception of an agreement such that "the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all," then "mutual assent is lacking and the contract is void." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996) (citation, internal quotation marks, brackets, and emphasis omitted). To succeed on this theory, VACC

must show: (1) misrepresentation (including by omission) and (2) reasonable reliance on that misrepresentation. *Id.* at 419–20; *Ramos v. Westlake Servs. LLC*, 242 Cal. App. 4th 674, 688–89 (2015). VACC cites no case granting relief under this theory where, as here, the purported fraud at issue was perpetrated by an agent of the party seeking relief, with no allegation that the other party to the contract was in any way at fault. Regardless, "fraud does not render a written contract void where the defrauded party had a reasonable opportunity to discover the real terms of the contract." *Rosenthal*, 14 Cal. 4th at 419–20. Bayat appeared at the hearing where the settlement was placed on the record, heard Judge Kim recite the terms of the agreement, and stated his agreement to those terms on behalf of VACC. While VACC argues that Bayat acted reasonably in repeatedly asking his counsel to include a representation clause in the settlement agreement, Opp'n at 16, nothing prevented Bayat from withholding his assent when Judge Kim failed to recite that term as part of the agreement on the record, or from asking at the hearing that such a term be included, as Davis's counsel did with respect to a term regarding the Court's continuing jurisdiction to enforce the agreement.

### 3. Material Terms Missing from the Settlement Agreement

VACC's fourth claim is for "material terms missing" in the settlement agreement. FAC ¶¶ 80-87. The Ninth Circuit has addressed the test for setting aside a contract lacking material terms as follows:

> [A] term may be "material" in one of two ways: It may be a necessary term, without which there can be no contract; or, it may be an important term that affects the value of the bargain. Obviously, omission of the former would render the contract a nullity. *See Citizens Utils. Co. v. Wheeler*, 156 Cal. App. 2d 423, 319 P.2d 763, 769–70 (1958) (arms-length acquisition of a private company's shares couldn't proceed because price was omitted from the contract). But a contract that omits terms of the latter type is enforceable under California law, so long as the terms it does include are sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages. *See Elite Show Servs., Inc. v. Staffpro, Inc.*, 119 Cal. App. 4th 263, 14 Cal. Rptr. 3d 184, 188 (2004); 1 B.E. Witkin, *Summary of California Law, Contracts* § 137 (10th ed. 2005) . . . ; *cf. Terry v.* Conlan, 131 Cal. App. 4th 1445, 33 Cal. Rptr. 3d 603, 612–13 (2005).

*Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1037–38 (9th Cir. 2011). There is no dispute that the terms stated by Judge Kim are sufficiently complete to be enforceable as an

13

agreement, assuming the parties intended to enter such an agreement. The agreement therefore cannot be set aside for failure to include material terms. VACC's argument that the agreement did not include all terms that VACC considered necessary—or in other words, "important term[s] that affects the value of the bargain," *cf. id.*—is better characterized as a question of mutual assent, which fails under *Doi* because Bayat stated his assent on behalf of VACC on the record, as discussed above. *See Doi*, 276 F.3d at 1139.

VACC seeks to distinguish *Facebook* on the basis that, unlike here, the contract there "specifie[d] how to fill in the 'material' terms that the [aggrieved parties] claim[ed were] missing from the deal," through the use of a delegation clause permitting Facebook to determine the form and documentation to be used for an acquisition of shares. *See Facebook*, 640 F.3d at 1038; Opp'n at 18. Although the delegation clause buttressed the Ninth Circuit's conclusion that the contract was valid, the court did not rest its decision on that clause, instead holding that "[d]elegation isn't necessary for a contract like the Settlement Agreement to be enforceable." *Id.* VACC has presented no argument that the agreement as stated by Judge Kim lacked terms necessary to render it enforceable.

### 4. Material Terms Missing from the Stipulation

VACC's fifth claim is for lack of material terms in the stipulation of dismissal, rather than in the settlement agreement stated on the record. FAC ¶¶ 88–95. The Court rejects VACC's argument that the stipulation served as an amendment to the agreement stated on the record. *See* Opp'n at 19. Nothing on the face of stipulation and no factual allegation of VACC's complaint supports the conclusion that the stipulation was intended to displace the agreement on the record such that the oral agreement would no longer bind the parties. *See, e.g.*, *Guzik Tech. Enters., Inc. v. W. Digital Corp.*, No. 5:11-cv-03786-PSG, 2014 WL 12465441, at *5 (N.D. Cal. Mar. 21, 2014) ("The fact that the parties were to later draft other agreements 'reasonably necessary to effect' the terms of the term sheet, does not make any less binding those terms that *are* agreed to in the signed term sheet.").

Nevertheless, the enforceability of the stipulation standing alone is questionable. In particular, it would be difficult "for a court to determine whether a breach has occurred, order

14

specific performance or award damages," *see Facebook*, 640 F.3d at 1038, with respect to the term requiring the parties to "prepare a written settlement agreement, which shall be moderated by Magistrate Judge Sallie Kim in the event of unresolvable disagreements on its terms." *See* Stip. & Order. The stipulation by its terms contemplates "unresolvable disagreements," suggesting that the anticipated written agreement would not be limited to the terms stated on the record, but would instead include terms not stated in the either the oral agreement or the parties' stipulation. There is also a real question as to VACC's counsel's authority to sign this stipulation—which, unlike the oral agreement, does not indicate that Bayat himself assented to it—in light of counsel's repeated assurance to Bayat that any written agreement would include a representation clause, despite apparently having obtained no such agreement from Davis or his attorneys. *See, e.g.*, *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1145 (9th Cir. 1977) (remanding for further proceedings under Rule 60(b) to determine whether an attorney had authority to enter a settlement agreement).

At the hearing, Davis's counsel stated that Davis would not object to waiving the requirement that the parties prepare a written contract, and counsel for VACC stated that VACC would not pursue this action solely to invalidate that requirement if VACC's claims seeking to alter or set aside the oral settlement agreement were dismissed. Accordingly, in light of the Court's dismissal of VACC's other claims, no actual controversy remains regarding the validity of the parties' stipulation, as distinct from the oral agreement. This claim is therefore DISMISSED.

### E. Rescission Under Section 1689

Section 1689 of the California Civil Code provides in relevant part that a contract may be rescinded "[i]f the consent of the party rescinding . . . was given by mistake." Cal. Civ. Code § 1689. Such mistake may be a mistake of fact, as defined by Civil Code section 1577, or a mistake of law, as defined by Civil Code section 1578. *Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1421 (1996).

VACC argues that it is entitled to relief under this provision because Bayat's statement of assent was based on his mistaken belief that a subsequent written agreement would include the representation clause omitted from Judge Kim's recitation of the terms. *See* Opp'n at 20. In other words, despite Judge Kim's recitation of terms as a binding oral agreement with no representation

15

clause and no requirement that the parties enter a subsequent written agreement, Bayat mistakenly believed that such terms would not bind VACC without Davis also agreeing in a written contract to make certain representations. This sort of "subjective misinterpretation of the contract . . . is at most a mistake of law," which occurs "when a person knows the facts as they really are, but has a mistaken belief as to the legal consequences of those facts." *Hedging Concepts*, 41 Cal. App. 4th at 1421 & n.9.[7] Under section 1578, a mistake of law is only grounds for rescission if it was either shared by all parties or made by one party with the other parties' knowledge of that mistake and failure to rectify it. Cal. Civ. Code § 1578; *Hedging Concepts*, 41 Cal. App. 4th at 1421. VACC has not alleged either that Davis shared Bayat's mistaken belief that Davis was required to make certain representations, or that Davis knew of Bayat's mistake to that effect. Rescission is not available for such unilateral misunderstanding of a contract. *See Hedging Concepts*, 41 Cal. App. 4th at 1421–22. This claim is therefore DISMISSED.

VACC's initial complaint included allegations, albeit conclusory, that Davis and his attorneys knew of or contributed to Bayat's misunderstanding the settlement agreement, but VACC amended to remove them after Davis filed his first motion to dismiss, which also included a motion to strike those allegations under California's Anti-SLAPP law. Counsel for VACC conceded at the hearing on the present motion that VACC is not aware of sufficient facts to support such allegations. The Court therefore concludes that leave to amend this claim would be futile.

### F. Reformation Under Section 3399

Section 3399 provides, much like the standard above for rescission due to mistake of law, that a contract may be reformed if "does not truly express the intention of the parties" due to "fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected." Cal. Civ. Code § 3399. There is no allegation here of fraud by Davis, mutual mistake, or Davis's knowledge or suspicion that Bayat misunderstood the contract. VACC's opposition brief argues that this claim should survive "to the extent [Davis's] prior counsel misled

---

[7] Despite Davis's reliance on *Hedging Concepts* in his motion, VACC does not address this case or the distinction between mistakes of law and fact in its opposition brief.

16

[VACC's] Former Counsel into believing [Davis] would indeed agree to the Representation Clause in a written settlement agreement," Opp'n at 22, but the operative complaint includes no allegation that Davis's counsel in fact misled VACC's counsel, and all correspondence attached to complaint predating the parties' oral settlement was between Bayat and VACC's own counsel, providing no indication that Davis or his attorneys were aware of Bayat's understanding.

This claim is DISMISSED, and leave to amend is denied for the same reasons discussed above with respect to VACC's claim under section 1689.

### G. Declaratory Judgment Act

VACC has not articulated any particular theory underlying its eighth claim, under the Declaratory Judgment Act, which appears to be based on the theories addressed above. That claim is therefore DISMISSED for the reasons stated above.

### H. Timeliness of Service

Davis argues that untimely service warrants dismissal of this action independently of the arguments addressed above. Mot. (dkt. 56) at 23–25.

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). This rule "permits the district court to grant such an extension even absent good cause." *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 n.2 (9th Cir. 2003) (citing *Henderson v. United States*, 517 U.S. 654, 662 (1996)).

VACC brought this action on June 11, 2018, near the end of the one-year deadline to file a motion under Rule 60(b), and engaged on a process server on August 7, 2018, at which time thirty-three days remained for permissive service under Rule 4(m). *See* Woo Decl. (dkt. 60-1) ¶ 4. After several unsuccessful attempts at service at incorrect addresses, as well as delays associated with VACC's attorney transitioning to a new law firm, VACC succeeded in serving Davis on October 17, 2018. *Id.* ¶¶ 5–10; Proof of Service (dkt. 19). While VACC has provided no good explanation for waiting until near the end of the limitations period to file this action and waiting an

17

additional two months to hire a process server, Davis has articulated no real prejudice as a result of being served slightly more than a month after the permissive service deadline. *See* Mot. at 24 (asserting without evidentiary support that "Davis relied on the case dismissal and its one-year mark as a guarantee of peace and security for his personal life and start-up business."). The Court declines to dismiss any claims on account of that relatively short delay.

## I. Attorneys' Fees

California's anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim[.]

Cal. Civ. Proc. Code § 425.16(b)(1). A defendant who prevails on such a motion is entitled to attorneys' fees and costs. Cal. Civ. Proc. Code § 425.15(c)(1). Settlement negotiations are protected conduct within the scope of this statute, *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 963–64 (2010), and the Ninth Circuit has held that this provision may be applied to state law claims that are asserted in federal court, *U.S. ex rel. Newsham v. Lockheed Missiles & Space, Co.*, 190 F.3d 963, 973 (9th Cir. 1999). "[T]he anti-SLAPP statute does not apply to federal law causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

Davis does not argue that VACC's operative amended complaint implicates the Anti-SLAPP statute—likely because, as discussed above in explaining the defects of certain claims, VACC's current claims do not rest on any conduct by Davis, protected or otherwise, but instead rely almost entirely on the conduct of Bayat, VACC, and VACC's attorneys. Davis instead seeks fees for responding to the original complaint, *see* Mot. at 24–25, which included conclusory assertions within VACC's claims for relief (but not in its statement of the alleged facts) that Davis knew or should have known of Bayat's mistake, and that "VACC agreed to the Settlement Agreement through the fraud or misrepresentation of Defendant." *See* Compl. (dkt. 1) ¶¶ 33–34, 38, 50. After VACC filed that complaint, Davis notified VACC of his intent to bring an anti-SLAPP motion, but VACC refused to remove the allegations at issue. Ren Decl. (dkt. 56-1) ¶¶ 3–

18

5. After Davis filed such a motion, *see* dkt. 35, VACC voluntarily amended its complaint to remove the offending allegations. *See generally* FAC; *see also* Ren Decl. ¶¶ 6–7.

The test for an anti-SLAPP motion has two parts. To prevail on the motion, the defendant must fires show that the lawsuit arises from protected activity. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272–73 (9th Cir. 2013). If the defendant makes such a showing, the plaintiff can still defeat the motion by establishing a reasonable probability that it will prevail on its claim. *Id.* at 1273. With respect to the latter element, "[o]nly a cause of action that lacks 'even minimal merit' constitutes a SLAPP." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 700 (2007)

The first part is satisfied here by VACC's allegations in its original complaint that Davis secured the settlement agreement without a representation clause "[t]hrough fraud." *E.g.*, Compl. ¶ 50; *see Seltzer*, 182 Cal. App. 4th at 963. As for the second element, VACC has failed to show any likelihood of success on its claims. In response to Davis's first motion, VACC removed all allegations of Davis's wrongful knowledge and conduct from its amended complaint, without providing any support for such involvement. *See ARP Pharmacy Servs., Inc. v. Gallagher Bassett Servs., Inc.*, 138 Cal. App. 4th 1307, 1323 (2006) ("A plaintiff may not avoid liability for attorney fees and costs by voluntarily dismissing a cause of action to which a SLAPP motion is directed . . . [or by] amend[ing] a pleading to avoid a pending SLAPP motion."), *disapproved on other grounds by Beeman v. Anthem Prescription Mgmt., LLC*, 58 Cal. 4th 329 (2013); *see also Art of Living Found. v. Does 1-10*, No. 5:10-cv-05022-LHK, 2012 WL 1565281, at *25 (N.D. Cal. May 1, 2012) ("[T]he Court concludes that Plaintiff's amendment of the Complaint to remove the [SLAPP] claims is tantamount to a voluntary dismissal of those claims, which would likely have become subject to another anti-SLAPP motion.").

VACC argues that Davis should not recover fees based on the rule that a party does not "prevail" where "the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion," because all of the claims at issue in the original complaint remained in the amended complaint, albeit without allegations regarding Davis's or his attorneys' knowledge or conduct. *See* Opp'n at 25; *Mann v. Quality Old Time Serv., Inc.*, 139 Cal.

App. 4th 328, 340 (2006).  As discussed above, however, such knowledge or conduct would be necessary to sustain VACC's claims under sections 1689 and 3399 of the Civil Code.  The importance of such conduct is underscored by VACC's opposition brief, which relies on a speculative reference to such misconduct—"to the extent [Davis's] prior counsel misled [VACC's] Former Counsel"—to support VACC's claim under section 3399, despite no such allegation appearing in the present complaint.  Opp'n at 22.  The Court concludes that Davis obtained meaningful results from his first motion by causing VACC to remove references to conduct by Davis or his attorneys from its amended complaint, rendering at least some of VACC's claims non-viable.  Moreover, even if Davis had merely caused VACC to alter the asserted theories of its claims, without removing any cause of action, such results would be sufficient to award anti-SLAPP attorneys' fees.  *See Baral v. Schnitt*, 1 Cal. 5th 376, 395 (2016) ("[T]he Legislature indicated that *particular* alleged acts giving rise to a claim for relief may be the object of an anti-SLAPP motion.").

The motion for attorneys' fees is GRANTED, and VACC is ORDERED to reimburse Davis for fees and costs incurred bringing his first motion to dismiss and strike, to the extent that the motion targeted VACC's claims under California law based on protected conduct by Davis and his attorneys.  Davis has not provided a calculation of the fees he seeks.  Given that much of the motion addressed issues distinct from those claims, such as Davis's arguments regarding Rule 60 of the Federal Rules of Civil Procedure, *see* Mot. at 5–12, the fees that Davis may recover are limited, and the Court expects the parties to resolve the amount of such fees without need for motion practice.

## IV. CONCLUSION

For the reasons discussed above, Davis's motion is GRANTED, and this action is DISMISSED with prejudice.  Davis shall recover his attorneys' fees to the extent discussed above.  The Clerk shall enter judgment in favor of VACC.

**IT IS SO ORDERED.**

Dated: April 1, 2019

JOSEPH C. SPERO
Chief Magistrate Judge

20